(*Nashville*, December Term, 1950.)

Opinion filed July 27, 1951.

658 

JACK NORMAN, of Nashville, JOSEPH LUSTFIELD and MICHAEL H. BRODKIN, both of Chicago, Ill., for appellants.

NAT TIPTON, Assistant Attorney General, for the State.

Mr. Chief Justice Neil delivered the opinion of the Court.

The plaintiffs in error, who will be later referred to as the defendants, have appealed from a conviction of robbery, and accessory before the fact to the crime of robbery.

The defendants were at the May Term of the criminal court of Davidson County indicted by the grand jury in a three count indictment. The first count charged the defendants, Mendolia and Panczko, with the crime of highway robbery of one Jacob Davis on March 1, 1950. The second count charged the defendant, Walter Jedynak, with being an accessory before the fact to the robbery. The third count charged the defendant, Walter Jedynak, with being an accessory after the fact to the robbery.

The jury returned a general verdict of guilty as charged in the indictment and fixed their punishment at 15 years in the State penitentiary.

The trial judge, after considering the defendants' numerous grounds for a new trial, overruled it and granted an appeal to this Court.

The assignments of error are (1) the evidence preponderates against the verdict of guilty as to Walter Jedynak upon the charge of being an accessory before the fact and in favor of his innocence; (2) the evidence

preponderates against the verdict of guilty as to the defendants, Mendolia and Panczko, upon the charge of highway robbery and in favor of their innocence; (3) the trial judge erred in permitting the District Attorney General to ask the prosecutor, Jacob Davis, in the presence of the jury if he did not identify the defendants from photographs shown him after the alleged robbery, etc.; (4) the trial judge erred in overruling the defendants' motion for a mistrial, and in sustaining the State's motion to strike the same, the ground of the defendants' motion being based upon the contention that Jacob Davis had not testified before the grand jury and that defendants were deceived by the recitation on the indictment that the said Davis had been sworn and examined before the said grand jury; (5) the court erred in refusing to act upon the plea in abatement duly filed on behalf of each of the defendants; (6) the court erred in charging the jury as follows: ". . . There must be shown to your satisfaction, beyond a reasonable doubt by the State of Tennessee that the defendants Guy Mendolia, alias Nick Alvino, alias T. Alvino, and Paul Panczko, alias John Bell, alias P. Bell, feloniously and forcibly took from the person and from the immediate presence of Jacob Davis *personal property of some value* by violence and by putting the said Jacob Davis in fear . . ."; (7) the court erred in giving "undue prominence" to the theory of the State; (8) the court erred in failing and neglecting to charge the theory of the defendants; (9) the court erred in charging the jury as to the effect to be given the defendants' plea of "not guilty"; (10) the court erred in failing to instruct the jury that they could "convict all of the defendants or acquit all of them, or convict one and acquit two, or

convict two and acquit one''; (11) the court erred in accepting a general verdict; (12) it was error for the court to permit testimony wherein ''the State sought to prove aliases on the part of the defendants''.

It conclusively appears from the testimony that the three defendants, who resided in Chicago, Illinois, appeared in Nashville on February 27, 1950. The prosecuting witness, Jacob Davis, who was a salesman of diamonds, arrived by plane on the same day. The defendants registered at the Hermitage Hotel, all occupying the same room in said hotel, while Davis registered at the Andrew Jackson Hotel. The prosecutor Davis called upon a number of diamond merchants in the City of Nashville on the following day, which was February 28, 1950. He had planned to leave for Memphis by plane on March 1, but due to a strike he decided to take the night train for that city.

Since the defendants did not offer any testimony in their behalf there is no explanation or reason for their presence in Nashville at this time, nor does it appear why they were so closely associated, all three occupying the same room at the hotel. The State insists, of course, that they were here by prearranged plan to rob Davis of the diamonds which he had in his possession. In the light of their movements while in Nashville this contention is not unreasonable. The robbery occurred on the evening of March 1, 1950, between 9:00 and 10:00 o'clock P. M.

The defendants registered at the hotel under assumed names on February 27. They checked out on the morning of the 28th. The record is silent as to their actions on that day. It does appear, however, that about 8:30 on that night the defendants, Mendolia and Panczko,

came to a garage near the Hermitage Hotel in an automobile that was registered in the name of Mendolia's brother. They made inquiries of the night man as to whether or not he had in his garage a car bearing Pennsylvania license belonging to Jacob Davis (Davis resided in Pittsburgh, Pennsylvania). They seemed unwilling to accept the word of the attendant, but shortly thereafter they again registered at the Hermitage Hotel, the three occupying the same room they had on the previous night.

On March 1 long distance calls were placed from two booths in the Hermitage Hotel paystation, one to Mendolia's place in Chicago and the other to the number of Jacob Davis' home in the City of Pittsburgh. These calls were made during the morning of March 1. About 11:30 an attache of the Hermitage Hotel observed Panczko and Jedynak get a role of quarters from the cashier and go into the telephone booths. There can hardly be any doubt but that these men were making these calls to Davis' home to determine if he was actually in Nashville.

About 9:00 o'clock on the night of March 1, the three defendants left their room in the Hermitage Hotel. This was only a matter of a few minutes before the robbery, which occurred about 150 feet from the Union Street entrance to the hotel. A bell boy testified he offered to carry their bags to their car, which was parked somewhere near this entrance, but they refused. The last he saw of them they were proceeding across Union Street. About this time the prosecuting witness Davis was in the act of leaving the Andrew Jackson Hotel (less than a half block from the Hermitage Hotel) in a taxicab for the railroad station. He had in his posses-

sion a brief case containing diamonds valued at approximately $100,000. When his taxicab had reached a point a short distance from the Hermitage Hotel on Capitol Boulevard the defendants, Mendolia and Panczko, drove along beside the taxicab and waved the taxi driver to stop, which he did, thinking they were tourists and wanted some directions. The two defendants were driving a Ford car which had been stolen from a parking place on Capitol Boulevard.

When the two cars came to a stop Mendolia jumped out of the Ford with a pistol in his hand, opened the rear door of the cab and demanded of Davis the brief case. Davis grabbed hold of Mendolia's hand to prevent him from killing him and a shot was fired, but without an injury to anyone. During this encounter Panczko, who was driving the Ford car, urged Mendolia to "shoot the bastard".

The cab driver, Hurd, identified Panczko as the driver of the Ford car, and Davis was positive in his identification of Mendolia. The two men abandoned the Ford on 13th Avenue between Church and Grundy Streets. The prosecutor's brief case was later found in the Harpeth River several miles west of Nashville on the road to Memphis, Tennessee. The theory of the State is that Jedynak, the third defendant, was waiting near by in Mendolia's brother's car while the robbery was being perpetrated and that he later picked up Mendolia and Panczko, when they abandoned the Ford automobile.

██ The guilt of Mendolia and Panczko of highway robbery appears beyond a question of doubt. While the guilt of Jedynak as an accessory before the fact rests upon circumstantial evidence, we think the evidence is sufficient to sustain the verdict of the jury. He

came to Nashville with Mendolia and Panczko and all registered under assumed names; all occupied the same room at the hotel; he was active in making the long distance calls to the Pittsburgh home of Davis to determine if he was in Nashville; he left the hotel with his co-defendants shortly before the robbery, and there can be no doubt but that he disappeared with them immediately after the robbery. The question very naturally occurs what became of Mendolia's brother's car, if Jedynak did not drive it away with the two robber companions occupying it?

All three of the defendants are here under a presumption of guilt. When all the facts and circumstances are considered it cannot be said that the evidence preponderates in favor of the innocence of either of the defendants. It is sufficient to show Mendolia and Panczko as actually participating in the robbery, also that Jedynak was cooperating with them as a co-conspirator in the crime. We are not justified in making any technical distinctions between a conspiracy to commit a crime and an accessory before the fact, if indeed any can be made.

It cannot be doubted that in order to convict one of being an accessory before the fact, if not present, it must appear that he counseled, encouraged, and aided and abetted in the crime. While Jedynak was not actually present at the scene of the robbery, the evidence shows that he was aiding his co-defendants, and cooperating with them as heretofore pointed out in this opinon.

We find no merit in the assignment that the court permitted Davis to testify that he recognized Mendolia from a picture which was presented to him. The picture was not introduced in evidence as an exhibit

and was never shown to the jury. It appears further-more that immediately thereafter Davis identified Mendolia who was seated in the court room. Identification of one accused of crime by means of pictures is not objectionable where there is no undue prejudice of his rights. If, however, it is necessary to exhibit a picture as a means of ferreting out a conspiracy to commit a crime the accused has no right to object even though it may be prejudicial. *Brown* v. *State,* 186 Tenn. 378, 210 S. W. (2d) 670.

The next assignment of error, and which is strongly urged as a ground for reversal, is that the trial judge committed error in refusing a mistrial, and also for his failure to consider defendants' plea in abatement.

Upon cross-examination of Davis it developed that he had not testified before the grand jury, although his name appeared as "prosecutor" on the indictment with other listed witnesses, and was sworn to testify, etc. Contention was made that the indictment was defective, false on its face, and defendants were deceived thereby. In addition to a motion for a mistrial the counsel offered a plea in abatement, based upon the foregoing facts, which the court disallowed. Section 11599 of the Code provides that it shall be the duty of the foreman of the grand jury "to indorse on the indictment, or, if it be a presentment, on the subpoena, the names of the witnesses so sworn by him, and sign the same officially, but the omission to indorse the same on the indictment or subpoena shall in no case invalidate the finding of the indictment or presentment, if the witnesses were, in point of fact, sworn by him according to law."

■■ We think the provisions of the statute are directory rather than mandatory. While we have no case

in this State directly in point, we have held that the presence of court officers in the grand jury room during its proceedings while *"highly reprehensible"* will not have the effect of invalidating an indictment, although the statute prohibits the prosecuting attorney from being present when the grand jury acts upon the indictment. *Sadler* v. *State*, 124 Tenn. 50, 53, 136 S. W. 430. Under Code Section 11647 all indictments for a felony are required to be returned into open court and "shall be entered by the clerk with the return in full on the minutes of the court". In *Glasgow* v. *State*, 68 Tenn. 485, it was held that an indictment for a felony, and filing of a plea of "not guilty" thereto, the order of the presiding judge (who was of counsel for the accused and incompetent) to spread the indictment upon the minutes of the court *"in no wise affected the interest of the accused."* In further construing Code Section above (11647) it was held: "The omission to have spread the indictment upon the minutes *would in no way have enlarged or diminished the rights of the accused."* (Emphasis supplied.)

In the case at bar the indictment was available to the defendants at all times. It fully apprised them of the charge of felony and that they must meet the accusation that they had "forcibly" or with "violence" robbed Davis of diamonds. No contention is made that they did not know that Davis would testify against them, as well as others whose names appeared on the back of the indictment. It is true that Davis was the only one who could give direct testimony that he was the owner of the stolen property. But his failure to appear before the grand jury does not have the effect of invalidating the indictment, inasmuch as the crime of robbery was easily established by other testimony. The defendants

were in no way prejudiced by the fact that the indorsement on the indictment that Davis was sworn and testified before the grand jury, when he had not so testified. It would have been a waste of public time to enter a mistrial and direct the grand jury to reconsider the indictment while the defendants waited for the correction to be made. Able counsel for the defendants do not make any claim in their elaborate brief that these defendants suffered any wrong by reason of the failure of the court to grant a mistrial or to hear the plea in abatement. Moreover the defendants made no application to withdraw their plea of not guilty and to be permitted to file a plea in abatement to the indictment. It is settled law in this State that a plea in abatement may not be filed in any criminal case while the plea of the general issue of ''not guilty'' is in effect. *Turner* v. *State,* 187 Tenn. 309, 213 S. W. (2d) 281. See also *Batey* v. *State,* 191 Tenn. 592, 235 S. W. (2d) 591.

The next error complained of is that the trial judge used the word ''forcibly'' in his charge, where the indictment did not contain such an expression. The indictment, however, charged that the taking was done ''violently''. The two words are synonymous, *McTigue* v. *State,* 63 Tenn. 313, and this assignment requires no further notice.

The 7th, 8th and 9th assignments complain that the trial judge stressed the theory of the State and did not present the defendants' theory except in a very limited and inadequate manner. When the defendants were thus confronted with what they conceived to be a prejudicial charge it was their duty to present a special request setting forth in detail their theory. Having failed to ask for additional instructions they cannot now complain. *Gentry* v. *State,* 184 Tenn. 299, 198 S. W. (2d) 643.

■ There is no merit in the 10th assignment wherein complaint is made that the court failed to instruct the jury that they might convict some one or all, or acquit only one or two or all as in their opinion the testimony warranted it. No special request was offered upon this point, and besides we think the court's charge was adequate.

. ■ ■ The 11th assignment is that the verdict is erroneous. Mendolia and Panczko were indicted for robbery, while Jedynak was indicted as an accessory before and after the fact. The verdict as rendered found them guilty as charged and fixed their maximum punishment at 15 years in the penitentiary. There is no ground for complaint on the part of Mendolia and Panczko as to the form of this verdict. We think it is obvious the jury found Jedynak guilty as an accessory before the fact since accessories before the fact are punished as principals. *Chapple* v. *State,* 124 Tenn. 105, 135 S. W. 321. Moreover it is settled law in this State that a general verdict will be held applicable to the count of the indictment which is sustained by the evidence, " 'although the other counts may be fatally defective.' " *Chapple* v. *State,* supra, 124 Tenn. at page 110, 135 S. W. at page 323.

■ The 12th assignment of error complains that it was error to permit police officers from Chicago to testify that the defendants were never known in that city by certain aliases. There was no objection made to this evidence, and for this reason if none other the trial court will not be put in error. However, it was proper for the State to show that they registered at the Hermitage Hotel under assumed names. It was a circumstance to be considered by the jury as tending to show that

the defendants were engaged in some transaction in which it was deemed necessary to conceal their identity.

We have given full consideration to each and every assignment of error and find them wholly without merit. It results that the judgment of the trial court is affirmed.

All concur.