VERNON STOOTS

*v.*

STATE OF TENNESSEE.

(*Jackson,* April Term, 1959.)

Opinion filed June 5, 1959.

JOHN W. NORRIS, Brownsville, for plaintiff in error.

JAMES M. GLASGOW, Assistant Attorney General, for the State.

MR. JUSTICE BURNETT delivered the opinion of the Court.

Stoots was convicted of involuntary manslaughter of Pearlie Mae Harris, a Negro woman, and was sentenced to serve eight months in the county workhouse. He has

seasonably appealed, assigned errors, filed briefs and arguments have been heard. We now have the matter for determination.

The jury had ample material evidence to find a state of facts from which to base this conviction as follows, to-wit: Stoots was driving his 1957 Ford automobile on the highway between Brownsville and Bells, at about 9:30 o'clock at night on June 1, 1957. He admittedly was driving between 60 and 65 miles per hour, and he pulled around a car, for the purpose of passing it, in his lane of travel. There was an on-coming car and when Stoots turned back into his lane of traffic, he ran into the rear of a 1950 model GMC truck. There were four Negroes riding in the cab and a Negro man and a small girl riding in the rear of the truck. The accident occurred in Haywood County, in Hatchie Bottom, in the vicinity of a series of two or more bridges. After the impact the Stoots car came to rest on a bridge approximately 106 feet from the point of where the collision occurred as evidenced by skid marks. At the point of the impact the tracks were deeply embedded into the asphalt. The Stoots car also made skid marks for a distance of 168 feet before the point of impact.

The pick-up truck, which was being driven at approximately 30 miles per hour, traveled a distance of 780 feet from the point of impact until it stopped. The accident caused the death of Pearlie Mae Harris, who was one of the occupants in the cab of the truck.

Stoots admitted that he had drunk two or three cans or bottles of beer during the afternoon and evening.

He claims that he was not intoxicated, although there is evidence of strong odor of alcohol in and about his

car and there is evidence that he was under the influence of an intoxicant. Witnesses testified that he talked with a thick tongue. He suffered from a cut lip and eye bruises and soreness of the chest. The smell of alcohol was apparent an hour or two hours later in the hospital room.

Stoots testified in his own behalf that when he went around the car the truck did not have a taillight and consequently he could not see the truck on account of the headlights of the on-coming vehicle, although the highway was straight and level for a long distance. The owner and driver of the truck testified that his taillight was functioning when he left Brownsville a few minutes before.

There are some three or four assignments of error. The first is that the evidence does not support the verdict or that it preponderates against the finding of the jury. We think after reading this record that there is ample material evidence to support either of two theories indicating the guilt of the plaintiff in error. First, there is evidence that he was under the influence of an intoxicant; and, second, he admittedly was driving 60 or 65 miles per hour which is in excess of the speed limit imposed by statute at night, T.C.A. sec. 59-852. We think therefore that the evidence does not preponderate against the verdict in favor of the innocence of the accused. Thus it is when there is conflicting evidence and material evidence to support the theory of the State the finding of the trial court, the trier of facts, is sufficient to support such a conviction. This finding is a finding of the credibility of the witnesses accepted by the body that tries the facts and any conflicts between this evidence are settled

by this body. *Ferguson v. State,* 138 Tenn. 106, 196 S.W. 140.

■ The error which is argued most forcibly and the one which has caused us most concern was raised by way of a plea in abatement. The basis for this assertion is that under the practice prevailing in the circuit in which this county is located, is that presentments are prepared and written by the District Attorney General. The grand jury from its membership, selects a secretary, and endorses the names of the members of the grand jury on each presentment in the presence of the other jurors. At the conclusion of each day's business, the grand jury, having presentments with endorsements thereon, votes on each presentment to determine whether it should be returned to the court. This arrangement for handling presentments was discussed and agreed upon by the members of the grand jury and the District Attorney General when the grand jury was organized at the commencement of the term at which the plaintiff in error was convicted. The record shows that the presentment against Stoots, the plaintiff in error, was endorsed or signed at the conclusion of the presentment by the District Attorney General. It is in two counts.

On the back of the presentment appears the style, *"State v. Stoots,* Presentment for Reckless Driving and D.W.I. and Manslaughter." The names of the witnesses are endorsed thereon and the names of those summoned for the State are endorsed thereon and likewise signed by the District Attorney General and then appears the signature of the foreman of the grand jury and then signed by the 12 grand jurors.

■ To this presentment a motion to quash was made and also a plea in abatement was filed. A plea in abatement in such matters is the proper way to raise the question. *Chairs v. State,* 124 Tenn. 630, 139 S.W. 711.

As said above this presentment is in two counts and bears the endorsements and signatures as above indicated. After this plea in abatement was filed on proof heard and by stipulation the facts above as to how the presentment was signed was before the trial judge. After having heard these stipulations, and evidence to this effect, the trial judge concluded, as he had in other cases where a similar question was raised, that the presentment was valid. He overruled the plea in abatement.

Let us again rehash what was done as is shown by this record. The presentments were prepared and signed by the District Attorney General. The grand jury had selected one of its members a secretary of that body. This secretary with the consent and at the direction of each of the grand jurors signs the names of each on the presentment in the presence of the other grand jurors. At the conclusion of each day's business this grand jury, having these presentments before it with the endorsements thereon, then votes on each presentment to determine whether it should be returned to the court. After this vote the presentment is returned to the court.

The plaintiff in error insists that the presentment is invalid because the several members of the grand jury did not manually affix their signatures on it. Thus the question is whether or not when the District Attorney General has prepared the presentment and signed it the grand jurors may agree that a member of that body, the grand jury, may act as secretary for them and affix their

signatures, that is, the signatures of the other grand jurors thereon and after that the members of the grand jury adopt the signatures as their own by voting to present the accused, and returning the presentment in open court.

There is no statute in this State as to how, or that a presentment must be signed by all members of the grand jury. There is no judicial determination in this State that all grand jurors must sign a presentment. It has been the practice in this State since the earliest days, and all the authorities make reference when referring to a presentment to the fact that a presentment "is signed by the grand jurors individually". But in examining and reading the authorities, as we have done, there is no case which says that the presentment must be signed by all of the grand jurors.

Let us take one of the first cases that we have read (one of the oldest) on the question which is *Garret v. State,* 17 Tenn. 389. In that case this Court said this:

"* * * but in this state the practice has not been to frame a bill of indictment upon the presentment, but to put the prisoner upon trial on the presentment, which is in form an indictment, except that, instead of being signed by the attorney general and foreman of the grand jury, it is signed by the grand jurors individually, and this practice has been recognized by our courts."

This case then goes on to hold that if an offender may be put to trial upon a presentment made on the personal knowledge of the grand jurors that the court sees no reason why the presentment should not be upon the in-

formation received aliunde, ''when the law expressly authorizes such information''.

The question of presentment and indictments is next found in *State v. Darnal,* 20 Tenn. 290, where this Court comments on how presentments were used in England and said:

''But such has not been the practice in the State of Tennessee. Here, when the grand jury or any one of their body, is cognizant of an offense, the practice is to inform the attorney general thereof, in the first instance, who prepares a bill of indictment upon the information, which is delivered to the grand jury and is by them returned, instead of the old informal presentment; the consequence is that the only difference between a presentment thus made and a bill of indictment is that the presentment is signed by all the jurors and the bill of indictment only by the foreman. This will explain why the presentment in this case is in the form of a bill of indictment.''

And then again we find the question in *Chappel v. State,* 1835, 16 Tenn. 166, and the Court in that case refers to the fact of a difference between an indictment and a presentment and tells how the indictment or presentment is brought into court—the clerk calls the jurors, etc. And again in *Glenn v. State,* 1851, 31 Tenn. 19, the Court said:

''The mode of prosecution by presentment, both in cases of crimes and misdemeanors, is as legitimate, and as fully recognized by the common law and by the Constitution of this state, as is that by indictment. And the exercise of the power of sending for witnesses by the grand jury, while it is no more anomalous in the

one case than in the other, is certainly alike necessary in both, in order to ensure the detection * * *'', etc.

We cite lastly on this question the old case of *Gunkle v. State,* 65 Tenn. 625, which probably has been cited more than any other case and is looked to and pointed out as the one which requires the grand jurors to sign the presentment. This case though does not hold that a presentment must be signed by the grand jurors. The question determined by this case is and the indictment was held bad in that case because ''there is no endorsement showing that this indictment was found 'a true bill' by the grand jury.'' There are other cases where the question has been commented on by the court very much in the same tenor as that hereinabove referred to. In no case though is it laid down as a positive rule that the presentment must be signed by the grand jurors.

In indictments we have a statute requiring that certain endorsements be placed on the indictment as ''a true bill'' or ''a no true bill'' (Sections 40-1706, 40-1707, T.C.A.) the cases have held as in the *Gunkle v. State,* supra. The following Section of the Code, Section 40-1708, T.C.A., provides for the names of witnesses to be endorsed on an indictment, etc. This Court has held that this Section, that is, the endorsement of names of witnesses on it is directory only. *Mendolia v. State,* 192 Tenn. 656, 241 S.W.2d 606.

■ The only constitutional provision that we have in reference to a presentment is that contained in Section 14 of Article 1, which provides:

''No person shall be put to answer any criminal charge but by presentment, indictment or impeachment.''

It is to be noticed that this provision of the Constitution is likewise codified in identical language in Section 40-301 of the Code. The next Section says that methods of prosecution for a violation of all criminal laws may be by indictment or presentment of a grand jury. Nowhere is there any specification or requirement in the Constitution or the Code as to what form or manner or method a presentment must be made in. The practice apparently, in the old cases at least or the ones where it has been commented on and most of them hinge back to some older case, come from the practice of our mother State of North Carolina. The North Carolina Constitution back at the time that Tennessee was made a State contained almost the identical thing ours has, that no criminal charge should be made "but by indictment, presentment, or impeachment." Section 8 of the Declaration of Rights of that State, North Carolina. This provision in the Constitution of North Carolina was changed and the General Assembly of that State in 1797 provided that no person should be arrested on a presentment of the grand jury or put on trial before any court but on an indictment found by the grand jury. This question is very interestingly discussed by Ervin, Justice, in *State v. Thomas*, 236 N.C. 454, 73 S.E.2d 283. The Court there gives the reasons of why presentments are not longer favored in that State. Our investigation of the authorities show that in the overwhelming majority of jurisdictions presentments are no longer a part of the machinery in indicting one for a crime. Tennessee though is an exception and still has the presentment as part of such machinery. It is provided in Section 40-1702, T.C.A., that where the word indictment is used in this State it shall likewise include a presentment. The preceding Section

defines an indictment. A very learned and scholarly review of many of the cases above referred to and others is made by the late Mr. Chief Justice Grafton Green in *State v. Davidson*, 171 Tenn. 347, 103 S.W.2d 22, 24. After reviewing a number of these cases and many Code Sections he concludes that:

"It is impossible to avoid the conclusion that the design of the Code of 1932 was to make all offenses subject to prosecution upon presentment."

He likewise concluded therein that this practice of presentment instead of indictment has grown up to be a part of the law in this State long followed. These same questions are again interestingly discussed by the late Mr. Justice Cook in *Stanley v. State*, 171 Tenn. 406, 104 S.W.2d 819, 822. In that case the opinion concludes thus:

"The grand jury is not an agency of the district attorney or of the court. Under our system it is an agency of the government and may act independently of the court and district attorney. The grand jury might refuse to hear witnesses brought before it by order of the district attorney but if instead of refusing it examined the witnesses and upon the tesimony of such witnesses found that an offense had been in fact committed, we can conceive of no reason to justify a holding that a presentment so made is void."

So it is with the authorities in this State. In 42 C.J.S. Indictments and Information, sec. 55, p. 910, it is stated:

"By the weight of authority, in the absence of a statute, it is not necessary that an indictment or presentment shall be signed either by all the grand jurors or by the foreman."

Authorities are cited thereunder which upon examination indicate that in the absence of a statute requiring signatures on these documents that the weight of authority holds that it is not necessary to have the signatures thereon. This seems reasonable. The Kentucky Court in *Commonwealth v. Stepp,* 193 Ky. 469, 236 S.W. 1049, 1050, said this:

> "There is no provision of the Code nor any statute which requires the indictment to be subscribed at its end by the commonwealth's attorney, nor to be subscribed by any one, and hence would be sufficient if subscribed by no one."

Of course we are not talking about indictments in the instant case but the reasoning is certainly apropos. If the Statute does not require the indictment to be signed by 12 men and the presentment is made as it was under the facts of this case where the grand jurors heard the evidence, voted on a presentment and authorized someone else to sign their names, how can any harm be done by this? Is it not just as much the responsibility of each of these grand jurors under the facts of this case by the authorization as if they had manually affixed their signatures thereto? The same proposition as stated in the quotation from C.J.S. will be found in 27 Am.Jur., p. 612, Sec. 40 and 42. The better reasoned authorities hold as to the question as to fixing these signatures, even under a statute, is directory rather than mandatory. And see on the same question, 24 Am. Jur., p. 845, Sec. 19, Grand Jury.

 It seems to us that the question here should be resolved upon the basis of the historical significance of presentments as above indicated and the practical con-

sideration of operating and conducting the business of a grand jury. The weight of authority is that presentments need not be signed by grand jurors in the absence of a statute. At common law there was no requirement that a presentment be signed by the grand jurors. *State v. Cox,* 28 N.C. 440. In the case now before us Stoots' rights were duly safeguarded by the procedure followed in this case, and the manual signing of the presentment would have been nothing more than a formality because the grand jury voted to return the presentment and thereafter returned it in open court.

A study of the determination of the criminal cases in this State from its beginning up until the Harmless Error Statute (Section 27-117, T.C.A.) was passed in 1911 that the courts required a strict compliance with all technicalities, whether or not they affected the merits of the defense or not.

"This statute forbids a reversal of any case coming to this court for any error in any part of the procedure below unless this court is of opinion, after an examination of the entire record, that the error complained of affected the merits. (Citing other cases construing the statute). It was declared in all those cases, as well as others, that the merits of a criminal case is the guilt or innocence of the accused. Of course, there may be such violation or disregard of some constitutional right of the accused, not affecting the merits, that would induce the court to order a new trial; *but it is difficult to see how one who is guilty of the offense of which he has been convicted can justly complain at errors in procedure which had no direct or remote relation to the judgment rendered against them.*" (Em-

phasis ours.) *Munson v. State,* 141 Tenn. 522, 524, 213 S.W. 916.

Thus it is, as we see it, there was no earthly harm done the plaintiff in error in this case and at most the procedure followed herein was harmless error.

 Let us just briefly comment on the fact that these signatures were signed with the authorization of everyone in their presence. In the absence of a statute the general rule is that a signature may be made for a person by the hand of another who acts in the presence of such person at his direction, request or with his acquiescence. 80 C.J.S. Signatures sec. 6, p. 1291. Our case of *Ford v. Ford,* 26 Tenn. 92, 97, is cited as authority therefor. It is also the general rule that a person may adopt a signature written for him by another by a subsequent approval and ratification. 80 C.J.S. Signatures sec. 2c, p. 1288. This rule was followed in the present case with the additional support that it was done by a prearrangement, and by agreement between the grand jurors, the District Attorney General, and the secretary who was a member of the grand jury so that there could be no question or misunderstanding concerning the intent of the grand jurors.

As said above this procedure in no way affects the question of the guilt or innocence of the plaintiff in error. There is no violation of any constitutional right of the plaintiff in error. His only right is to be either charged by indictment or presentment. There is no constitutional or statutory provision as to how a presentment shall be found or what shall be done under it. Consequently it seems to us that clearly this should not constitute a reversal.

74

■ Error is assigned to a statement of the trial judge in examining a prospective juror on voir dire. Among the questions, after going over all of the drunk driving, etc., the trial judge said:

"Then forget about the fact that you and everybody else are against drunk driving, including me, and give him a fair trial on that. If he is guilty stick him, and if he is not, turn him loose. Can you do that?"

After a colloquy in which this question was asked by the trial judge the prospective juror who was being questioned was excused.

The basis of the error is that the trial judge in effect commented on the facts of the case and expressed his personal opinion to the trial jurors who had been accepted that he was opposed to drunk driving. When you read the statement in isolation, that portion in effect might be arguable. The trial judge though did no more than try to ascertain the attitude of the prospective juror for bias and prejudice, to find out whether he could or could not give a fair and impartial trial on the law and evidence of the case. It seems to us that this is a reasonable construction of the colloquy. There was no objection interposed by counsel for the defense and he should not be heard to complain after the trial. In charging the jury the trial judge said:

"You must not imagine that the Court has any opinion in regard to the facts of this case, for it is your duty to find them, and I am attempting to read this charge to you so as to define to you the law without indicating my opinion whatsoever in regard to the facts."

Nothing else appearing to the contrary, the instruction certainly would be sufficient to dispel any idea from the minds of the jurors that they should consider anything except the law and the evidence.

After a careful consideration and several days study in reading many authorities, we are constrained to overrule all assignments of error and affirm the judgment.

NEIL, CHIEF JUSTICE (dissenting in part).

The practice and procedure in the criminal Court of Haywood County with reference to the grand jury's action, in finding and returning indictments and presentments, is contrary to the judicial history of this State. This is practically conceded by the majority opinion in citing cases to that effect, such as *Garret v. State,* 17 Tenn. 389, wherein it is held that the presentment *"is signed by the grand jurors individually"; State v. Darnal,* 20 Tenn. 290; and *Glenn v. State,* 31 Tenn. 19.

In Gilreath's History of a Law Suit, Seventh Edition, Section 722, page 829, it is said:

"Now, when the grand jury wish to present an offense, they call upon the attorney general to prepare a presentment in the form of an indictment, which he submits to them without his signature; *it is then signed by all of the jury and returned into court,* and it is to this the defendant is to answer."

We have no cases to the contrary. The foregoing rule of practice and procedure has been regarded by the Bench and Bar as the settled law of this State for more than a century, or since *Garret v. State,* supra, decided in 1836; and is the only practical method whereby an indictment or presentment is officially authenticated.

The majority opinion quotes the following excerpt from 42 C.J.S. Indictments and Information sec. 55, p. 910:

"By the weight of authority, in the absence of a statute, is it not necessary that an indictment or presentment shall be signed either by all of the grand jurors or by the foreman, * * *"

But the Assistant Attorney General for the State says with reference to this authority: "The rule in this jurisdiction is to the contrary in view of our cases."

I readily agree to the opinion of this Court in *State v. Davidson,* 171 Tenn. 347, 103 S.W.2d 22, 24, that:

"It is impossible to avoid the conclusion that the design of the Code of 1932 was to make all offenses subject to prosecution upon presentment."

But neither this case nor *Stanley v. State,* 171 Tenn. 406, 104 S.W.2d 819 (also mentioned in the majority opinion) departs from the historical practice as set forth in Gilreath's History of a Law Suit, supra.

Finally the majority contends: "In no case though is it laid down as a positive rule that the presentment must be signed by the grand jurors." This statement is correct. But the cases cited repeatedly state that the presentment "is signed by the grand jurors individually", or that "they will sign" it. I interpret the language used to mean that it is their *legal duty to affix their individual signatures to it.* It is an official act by each of them which cannot be delegated to another.

I do not dispute the general rule that a person may lawfully authorize another to sign his name and thus

bind him to any personal transaction. But in the absence of a statute signatures by public officers to a public document, which they are required to sign in order to authenticate it, cannot be delegated. 80 C.J.S. Signatures sec. 9, p. 1295. While there is some authority to the contrary, there is no case in this jurisdiction, until this appeal reached this Court, holding that a grand juror may delegate to another the performance of any official act which resides solely within his sound discretion.

Moreover I feel that any departure from the time honored practice of requiring jurors to sign their individual names upon a presentment would result in troublesome, if not dire, consequences. It would open wide the door to controversies as to whether or not a grand juror had actually delegated the authority to another to affix his signature to a presentment.

I agree that under the facts of this case the trial court should be affirmed. The defendant was not prejudiced by the form of the presentment. It was prepared and signed by the District Attorney General and the record affirmatively shows that the grand jurors voted to report it as a true bill which was done. In my opinion the defendant had a fair and impartial trial, and there is no ground for complaint as to the result.

For reasons stated in the foregoing memorandum opinion, I feel that the Court should expressly disapprove the practice prevailing in Haywood County, and possibly other counties in the district, where grand jurors do not sign their individual names to a presentment. In other respects I concur with the majority.