STATE of Tennessee, Appellant,

v.

Richard TAYLOR, Appellee.

Court of Criminal Appeals of Tennessee, at Nashville.

March 14, 1983.

Permission to Appeal Denied by Supreme Court June 13, 1983.

---

**1.** Codified as T.C.A. § 40–9–113 (1982) (formerly T.C.A. § 40–1013).

William M. Leech, Jr., Atty. Gen., Jerry L. Smith, Asst. Atty. Gen., Nashville, Joseph D. Baugh, Franklin, for appellant.

Carol L. Soloman, William P. Redick, Nashville, for appellee.

## OPINION

O'BRIEN, Judge.

This case comes to us in a novel light on the State's appeal from an order in the trial court for Hickman County dismissing a presentment on the grounds that the District Attorney General did not personally prepare the presentment, nor supervise an Assistant District Attorney General in its preparation.

On November 3, 1981 the Hickman County Grand Jury returned a presentment charging the defendant with murder in the first degree.

On March 20, 1982, a motion to dismiss the presentment was heard, based on the allegation that the District Attorney General pre-signed the charging document, and, in violation of Article 6, Sec. 5, of the Tennessee Constitution, was not in attendance during the November term of court when it was returned by the grand jury. In an order containing specific findings of fact and conclusions of law the trial judge held that the single issue presented was: "Must the District Attorney General of this Circuit be present to prepare, or superintend the preparation of presentments when so requested by the grand jury, or may he delegate this function to an assistant." He found that neither Article 1, Section 14 of the Tennessee Constitution, to the effect that no person shall be put to answer any criminal charge but by presentment, indictment or impeachment, nor Article 6, Sec. 5 of the Constitution providing for the appointment by the Court of an Attorney pro tempore, nor the statutes pertaining to such matters, prescribed or directed the manner or procedure for the preparation of presentments. Relying on case law he came to the conclusion that under our Constitution and statutes, in cases where the District Attorney General did not personally attend the court when in session in each of the counties in the district, the court was empowered to appoint a District Attorney pro tempore and it was an unconstitutional exercise of authority for an Assistant District Attorney General to prepare presentments, or perform the other duties of the Attorney General except when specifically and directly supervised by him. Holding that the presentment in this case was void ab initio, and the grand jurors' signatures were rendered a nullity, he dismissed the presentment, reserving the right to the State to present the defendant at a subsequent session of the grand jury.

The trial court relied principally on the case of *State v. Amos,* 47 S.W. 410, 101 Tenn. 350 (1898) for the conclusion that, "a statute authorizing a general delegation of the functions of the office (District Attorney General) to an assistant or investing him with power to perform other than clerical duties, must be held to be unconstitutional ...", and endeavored to relate his interpretation of the ruling in that case to the present Chapter 7 of Title 8 of Tennessee Code Annotated dealing with the election and duties of the District Attorney General. We have carefully reviewed the *Amos* case and do not find in its text the specific statement attributed by the trial judge to the author of that opinion. The opinion in *Amos* dealt particularly with the

constitutionality, validity, and construction of Chapter 24 of the Acts of 1897, authorizing District Attorneys-General in certain counties to appoint assistants, and to the power of the assistants if lawfully appointed. The statement in the opinion which we believe led to the erroneous conclusion of the trial judge in this case is as follows:

"It is clear that in such cases as provided in this section, [Chapter 24 of the Acts of 1897], the Legislature could not empower the District Attorney-general to appoint an assistant with power to exercise the functions of the office, but the office can only be filled *pro tempore* by the Court as the Constitution provides." (Emphasis in original text).

To the best of our knowledge *Amos* has never been cited as authority for that proposition since it was written in 1898. The case is mentioned in *State v. Edwards,* 129 S.W.2d 199, 174 Tenn. 542, p. 546 (1938), but the decision in *Edwards* is not based on its authority. For this reason, we conclude that *Amos* has not been looked on with favor, and must be narrowly construed and considered to be limited to its facts, based on the statutory law existing at the time of the decision.

Other cases dealing with the same subject throw some additional light on the issue. In *Foute v. State,* 4 Tenn. 98, (1816) an indictment was sent to the grand jury by one John Wilkerson who referred to himself as Acting Solicitor-General. The court held that no indictment ought to be sent to the grand jury without the sanction and approbation of the solicitor-general, proved by his signature on some part of the bill. And that such, ". . . . ought not to be allowed, not (sic) excluding those temporary officers who are legally appointed by the governor or court where such temporary appointments are provided for by law." In *Hite v. State,* 17 Tenn. 198 (1836), the court referring to the record as, "a piece of patchwork and confusion", made nominal reference to *Foute,* supra, while holding that before a court could appoint an attorney general pro tem, the record must show the attorney general was absent. The above cases were cited in *State v. Lockett,* 50 Tenn. 274, (1871), on the same principle. In *State v. Walker,* 54 S.W.2d 966, 165 Tenn. 305 (1932), the court, citing the *Foute* case, held, substantially as did the trial judge here, that an indictment not signed by the District Attorney General was void although his name was printed at the end of it, and that after an indictment is challenged by a defendant and subjected to the scrutiny of the court, the District Attorney General cannot give vitality to an unauthenticated and unofficially approved indictment by a subsequent inspection followed by his declaration of approval. We believe too, that this case should be strictly limited to its facts, construed in conjunction with the circumstances and statutes in existence at that time, and not in the light of present day conditions, evolving case law, and the statutes presently in effect. More recently the evolution in the law has become apparent in the case of *Stoots v. State,* 325 S.W.2d 532, 205 Tenn. 59 (1959), in which our Supreme Court through Justice Burnett, after a scholarly review of numerous authorities on the subject, held:

". . . In the absence of a statute the general rule is that a signature may be made for a person by the hand of another who acts in the presence of such person at his direction, request or with his acquiescence. 80 C.J.S. Signatures § 6, p. 1291. Our case of *Ford v. Ford,* 26 Tenn. 92, 97, is cited as authority therefor. It is also the general rule that a person may adopt a signature written for him by another by a subsequent approval and ratification. 80 C.J.S. Signatures § 2c, p. 1288. This rule was followed in the present case with the additional support that it was done by a prearrangement, and by agreement between the grand jurors, the District Attorney General, and the secretary who was a member of the grand jury so that there could be no question or misunderstanding concerning the intent of the grand jurors.

As said above this procedure in no way affects the question of the guilt or innocence of the plaintiff in error. There is no violation of any constitutional right of

the plaintiff in error. His only right is to be either charged by indictment or presentment. There is no constitutional or statutory provision as to how a presentment shall be found or what shall be done under it. Consequently it seems to us that clearly this should not constitute a reversal."

While the *Stoots* case deals with a presentment not signed by each grand juror individually, the more modern view expressed in *Stoots*, supra, is enlarged upon in our case of *Applewhite v. State*, 597 S.W.2d 328, (Tenn.Cr.App.1979), in which an indictment was returned without a grand jury foreman's signature. In this carefully cataloged and well considered case in the opinion of Judge Daughtrey, this Court said:

"However the majority rule appears to be that the failure to endorse or sign the indictment does not deprive the trial court of jurisdiction over the person of the defendant or the offense, so as to make any resulting conviction void. (Citations omitted). This is because in modern pleading practice (Which tends to be less hypertechnical than its common law predecessor), the foreman's signature has come to be viewed as 'a procedural safeguard rather than a substantive requisite of an indictment,' such that 'its presence or absence does not materially affect any substantial right of the defendant; and . . . . . neither assures to him nor prevents him from having a fair trial.' (citations omitted). Thus it has been held that 'the function of the endorsement and signature is to identify and authenticate the indictment,' (citations omitted), and that an indication of its proper return in open court serves substantially the same function. It has also been held that an omission in the endorsement or signature may be cured by amendment to the original indictment. (citations omitted) . . . . .

" . . . . . Tennessee law supports our conclusion that the defect in this indictment did not vitiate the court's jurisdiction over the subject matter and could therefore be waived. In *State v. Simmons*, 199 Tenn. 479, 287 S.W.2d 71 (1956), our Supreme Court held that the constitutional requirement that 'no person shall be put to answer in a criminal charge but by presentment, indictment or impeachment' is a personal right which may be waived. . . . "

 Neither defendant's brief, nor the trial judge's order dismissing the presentment, recognized what we consider to be the key phrase in Article 6, § 5 of the Constitution stating the duty of the District Attorney General to attend and *prosecute according to law.* Article 2, of the Constitution, establishing the distribution of powers of the separate branches of government, expressly reserves to the legislative branch the unlimited power to enact such laws pertaining to the operation of the government of the people, as it deems necessary, except insofar as it may be restrained by the state and federal constitutions. As we have observed in this opinion the Constitution does not restrain the legislature in any sense from the enactment of laws prescribing or affecting the duties performed by, or imposing restraints upon, the District Attorneys General in the State, in the procedure for the preparation of indictments or presentments. Nor, is there any statutory restriction. In T.C.A. § 8–7–101, et seq., prescribing the duties of the District Attorney General, there is no requirement or mandate that the District Attorney General must *personally* perform any of the duties relegated to him by the Constitution or the Legislature. To the contrary, by implication and directly, the statutes carry the connotation that an Assistant District Attorney General may act in the stead of the Attorney General in whatever capacity he is called upon to serve. In T.C.A. § 8–7–201(b)(4), providing for the compensation of assistants the legislature has clearly said, "Notwithstanding the foregoing language, in furtherance of the goal of developing a corps of capable and experienced full-time prosecuting attorneys throughout the State and thus enhancing the State's ability to cope with recent increases in crime and criminal activity in the State, . . . .", leaving no doubt that these full-time assistants were intended to be the alter ego of the

District Attorney General and to serve in whatever capacity he finds it necessary to utilize their services in carrying out his duties. In addition, Chapter 419, Sec. 1 of the Public Acts of 1981, in effect on the date of the ruling below, provides as follows:

"T.C.A. § 8–7–501. *Attendance of district attorney general at grand jury.*— Whenever required by the grand jury, the district attorney general *or his designated assistant* may attend before that body for the purpose of assisting in its inquiries, which assistance may include the examination of witnesses and the giving of legal advice as to any matters cognizable by that body; provided, however, that said district attorney general *or his designated assistant* shall not be present when the question is taken upon the finding of an indictment...." (emphasis supplied).

█ As clearly as it appears that the Constitution has placed no restrictions on the District Attorneys General in the prosecution of their duties, leaving it to the Legislature in its wisdom to enact laws designating those duties, it is equally clear that due to the transition of time bringing about the overwhelming increase in the duties of the Attorneys General as the result of the expanding crime rate and criminal activity it is the purpose and intent of the Legislature in providing him with assistants that they serve in whatever capacity is necessary to the function of the office.

We hold that the trial judge was in error in dismissing this case. The presentment is reinstated and the case is remanded for further prosecution in accordance with this opinion.

DAUGHTREY and TATUM, JJ., concur.