# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT NASHVILLE
### October 15, 2002 Session

## STATE OF TENNESSEE v. LEROY NEVILS

**Direct Appeal from the Circuit Court for Williamson County**
**No. I-141-901     Donald P. Harris, Judge**

---

**No. M2002-00411-CCA-R3-CD - Filed April 4, 2003**

---

The defendant was convicted of driving while under the influence of an intoxicant, a Class A misdemeanor. He appeals that conviction, raising the following issues:

(1) Sufficiency of the evidence and the proper standard of review when a recording of the trial is available for the reviewing court;

(2) Improper return of the presentment;

(3) Duplicitous presentment;

(4) Improper limitation on voir dire questions concerning potential length of incarceration;

(5) Improper limitation on voir dire questions whether jurors would trust a machine;

(6) Improper elicitation of an alcohol testing flashlight;

(7) Improper jury charge as to the certainty needed to find beyond a reasonable doubt; and

(8) Improper jury charge allowing inference of guilt for refusing a blood alcohol test.

After careful review of the record, we affirm the judgment from the trial court.

### Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court Affirmed

JOHN EVERETT WILLIAMS, J., delivered the opinion of the court, in which DAVID G. HAYES and JERRY L. SMITH, JJ., joined.

Joseph D. Baugh, Franklin, Tennessee, for the appellant, Leroy Nevils.

Paul G. Summers, Attorney General and Reporter; Kim R. Helper, Assistant Attorney General; Ronald L. Davis, District Attorney General; and Sharon T. Guffee, Assistant District Attorney General, for the appellee, State of Tennessee.

## OPINION

## Background

In the early morning hours of March 31, 2001, Tennessee State Trooper Richard Cash noticed an orange Corvette crossing the dividing lines on southbound Interstate 65 in Williamson County. He subsequently pulled the car over and, as he was approaching the car, he noticed the odor of alcohol. Leroy Nevils, the driver of the car and the defendant, was put through a series of field sobriety tasks which, according to Trooper Cash, the defendant failed. Trooper Cash then arrested the defendant and asked the defendant to submit to a chemical alcohol test. Cash informed the defendant that refusal to take the chemical test could result in the suspension of the defendant's license. The defendant refused to submit to the test.

Trooper Cash searched the car and found two bottles of "LTD," a brand of whiskey. One of the bottles was empty. The other was 3/4 full.

The defendant was indicted on one count of unlawfully driving or physically controlling a motor vehicle upon the public roads of the state of Tennessee, at a time when the defendant was under the influence of an intoxicant, under Tennessee Code Annotated section 55-10-401, a Class A misdemeanor. After a jury trial, the defendant was convicted and sentenced to 11 months, 29 days suspended on supervised probation; 48 hours to be served in a correctional facility; a $450 fine; a requirement to attend alcohol safety school; and a suspended driver's license for one year. The defendant's motion for a new trial was dismissed, leading to this appeal.

We will address the defendant's issues in order.

## Standard of Review

Where sufficiency of the evidence is challenged, the relevant question for an appellate court is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime or crimes beyond a reasonable doubt. Tenn. R. App. P. 13(e); Jackson v. Virginia, 443 U.S. 307, 319, 99 S. Ct. 2781, 2789, 61 L. Ed. 2d 560 (1979); State v. Abrams, 935 S.W.2d 399, 401 (Tenn. 1996). The weight and credibility of the witnesses' testimony are matters entrusted exclusively to the jury as the triers of fact. State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Brewer, 932 S.W.2d 1, 19 (Tenn. Crim. App. 1996).

The record in this case was submitted via a compact disc ("CD") recording of the trial proceedings. The defendant argues that the reviewing court is in the same position as the trier of fact in reviewing the evidence and, therefore, the proper standard of review in this case should be de novo without a presumption of correctness. In State v. Binette, our supreme court stated that "[w]hen a trial court's findings of fact on a motion to suppress are based solely on evidence that does not involve issues of credibility, appellate courts are just as capable to review the evidence and draw

their own conclusions. Accordingly, we hold that when a trial court's findings of fact at a suppression hearing are based on evidence that does not involve issues of credibility, a reviewing court must examine the record de novo without a presumption of correctness." 33 S.W.3d 215, 217 (Tenn. 2000). The defendant strongly argues that, because we have the opportunity to view the CD, we are just as capable as the trier of fact in reviewing the evidence and witness credibility. We respectfully disagree.

The Supreme Court in Binette specifically limited its holding to the facts of the case and expressly reserved decision on the issue of the proper standard of appellate review of a videotaped trial record until that issue is squarely presented. Id. at 217, n. 1. That issue appears to be squarely before this Court. We agree that when credibility is not an issue and we have the opportunity to review the evidence in the same manner as the fact finder, the need for deference to the trial court's findings is not implicated. Binette dealt with the standard of review when credibility was not in question. In direct contrast to Binette, credibility in the instant case is paramount, even controlling. We refuse to conclude that a CD videotape of the trial proceeding eliminates the trier of fact's credibility determinations. A CD recording of a trial does not offer the same view to a reviewing court as the trier of fact was able to see. The jury's collective eye is closer, sharper, and less filtered than ours in reviewing witness testimony and credibility. We agree with the State that to use a de novo, or 13th juror, standard of review in cases involving videotaped records would effectively usurp the role of the trier of fact. We are not willing to usurp that role by offering no deference to the trier of fact when credibility is at issue, as it was in the instant case. Accordingly, we will apply the longstanding standard of review in our analysis on this case.

**(1)    Sufficiency of the evidence**

The defendant was convicted of driving under the influence. Tenn. Code Ann. § 55-10-401. The statute reads, in pertinent part; "(a) [I]t is unlawful for any person to drive or be in physical control of any automobile . . . on any of the public roads and highways of the state . . . while: (1) Under the influence of any intoxicant . . ."

At trial, the State presented witnesses Trooper Richard Cash and Deputy David Savage and a videotape of the arrest. The defense offered Dalton Nevils, Cara Lane, and the defendant.

Officer Richard Cash, a trooper with the Tennessee Department of Safety for over 17 years who had extensive DUI training, testified that he stopped the defendant after witnessing the defendant weaving on Interstate 65. Approaching the defendant's car after the stop, Officer Cash stated he smelled alcohol. He said that he could tell by the defendant's demeanor that the defendant was intoxicated. He said the defendant fumbled around getting his driver's license, struggled with saying the alphabet during a sobriety test, had trouble following Cash's directions, looked sloppy with crumbs on his shirt, and stumbled around. He said the defendant refused to take a chemical blood test. After placing the defendant in the police car, Trooper Cash searched the defendant's car and found an empty bottle of whiskey and a 3/4-full bottle of whiskey. Additionally, Trooper Cash showed the jury a videotape of the arrest. The videotape showed the defendant drifting out of his

driving lane three times. It showed the defendant talking in a hesitant manner. It showed the defendant say the alphabet in a somewhat slurred manner but, contrary to Trooper Cash's testimony, showed the defendant did complete saying the alphabet. It showed the defendant failing to follow Trooper Cash's instructions for the sobriety task of walking down a line, as well as the defendant raising his arms to balance himself. It showed the defendant telling Trooper Cash that he had one drink earlier that day but that he had not been drinking that night. The tape also showed the defendant refusing to submit to any chemical tests, despite Trooper Cash's clear warning that the defendant's refusal could result in the loss of his driver's license.

On cross-examination, Officer Cash testified that he did not inform the defendant that the arrest was being videotaped nor did he inform the defendant that such behavior as the defendant raising his arms to balance himself could be used as evidence against the defendant. Cash admitted that he thought the defendant was intoxicated, even before administering any tests. He said he did not mirandize the defendant before administering any tests because he did not want to make the defendant nervous and that, despite already concluding that the defendant was intoxicated, he went through the sobriety tasks anyway since that was police protocol. On redirect, Officer Cash stated he was under no obligation to tell the defendant how he was doing during the arrest.

Deputy David Savage, a patrolman with the Williamson County Sheriff's Department who was working as a booking officer when the defendant was arrested, testified that the defendant smelled like alcohol when the defendant was brought in for booking. With this, the State rested its case and the defense continued.

Dalton Nevils, the defendant's cousin, testified that he was drinking in the defendant's car prior to the defendant's arrest. He said he was with the defendant as they searched for a spoiler for the defendant's car. Dalton said he got in the car with LTD whiskey and that, after they left a body shop where they looked for the spoiler, they bought another bottle of LTD. Dalton said the defendant did not drink any of the LTD.

On cross-examination, Dalton said the defendant does drink beer and may drink whiskey on holidays. He said he was not with the defendant the night of the arrest, so he was unaware how much alcohol the defendant drank that night. He said he left the LTD bottles in the defendant's car because he forgot about them when he left to take care of his father.

Cara Lane, a friend of the defendant, testified she was with the defendant the day in question, as the defendant was taking her to Nashville. She said the defendant bought her a twelve-pack of Busch beer at a convenience store and that the defendant drank one Heineken beer. She said that after the defendant drove and dropped her off in Nashville, he was supposed to go home around 11:15 p.m. She said ,to her recollection, she did not see the defendant have more than the one Heineken.

The defendant testified on his own behalf. He said the day before his arrest he was with Dalton Nevils, who was drinking LTD, but that the defendant was unaware that Dalton left LTD

bottles in the car. He said he did not drink LTD.

He said he picked up Cara Lane around 7:30 p.m. on the night in question to take her to Nashville. He said they stopped at a store, where he bought some Busch beer for Lane and a Heineken for himself. He said they stopped at "Binky's" place around 11:30 p.m., where he drank the one Heineken. According to the defendant, after he left Binky's, he stopped at Ed's Pizza restaurant where he had a sandwich and got some chips, the chips which he ate in the car as he drove home from Nashville. He said he left Ed's Pizza around 1:00 a.m. and drove all the way to Williamson County before being pulled over. He said the only reason he was drifting lanes was because he was about to exit the highway.

The defendant said he was not under the influence of an intoxicant and that he felt he was in good shape to drive. He said the fact he drove all the way from Nashville to Williamson County was evidence that he was in control of his car.

The defendant stated he did not take the breathalyzer test because he was not drunk, and he was worried about how many other people may have blown into the machine. He said he has trouble standing on one leg and the trooper did not explain the tests to him.

On cross-examination, the defendant stated he did not see the LTD bottles in his car. He again said he refused to take the breathalyzer test because he did not know how many other mouths had blown on the breath stick.

Because we were provided with a CD tape of the trial, as well as the videotape of the arrest, this reviewing court was in position to be able to compare the dialect the defendant used both in court and during his arrest. We note that the defendant had a hesitating manner of speaking in both situations. Nonetheless, we are not in position to substitute our opinion without deference to the findings of the fact finder, so this one piece of evidence will only be given proper weight.

We conclude the evidence was sufficient to support the jury's finding that the defendant was driving under the influence of alcohol. Reviewing the evidence in the light most favorable to the State, as we are required to do, presents us with the following: We have an experienced state trooper who smelled alcohol and noticed the defendant weaving his car as he drove. On the field sobriety tasks that he did undertake, we have the defendant's less then stellar performance. The defendant admitted to drinking the night of his arrest and to buying alcohol for a friend. Whiskey bottles were found in the defendant's car. Additionally, we have a videotape of the defendant's arrest that does show his car weaving, as well as the defendant's poor performance on the field sobriety tasks. A rational trier of fact could conclude beyond a reasonable doubt that the defendant was under the influence while operating his car on Interstate 65. We conclude this issue is without merit.

**(2)    Improper return of the presentment**

The defendant argues that the presentment in this case was improperly returned. The parties

stipulated that the presentment was returned to the circuit court clerk's office, as opposed to being returned to the clerk in open court. Indeed, Tennessee Code Annotated section 40-13-108 states, "[A]n indictment, when found by the grand jury and endorsed as prescribed by this part, shall be presented by the foreman, in the grand jury's presence, to the court, and filed by the clerk." However, as our supreme court stated in referring to presentments, "[T]here is no constitutional or statutory provision as to how a presentment shall be found or what shall be done under it." State v. Stoots, 325 S.W.2d 532, 538 (Tenn. 1959). Additionally, Tennessee Code Annotated section 40-13-101(b) states, "Wherever in this code "indictment" is used, it shall be taken to include presentment whenever the context so requires or will permit." So, while we agree that technical compliance with Tennessee Code Annotated section 40-13-108 was not met, the contents of the indictment and the required signatures were all complied with. Failure to return the indictment in open court is not fatal, as long as that failure is corrected. State v. Willis, 40 Tenn. 157, 158 (1859). That failure was corrected in the instant case by the inclusion of the signatures of the grand jurors. Accordingly, we find this issue without merit.

**(3)    Duplicitous presentment**

The defendant claims the presentment was duplicitous in that it allowed for a conviction if the defendant drove *or* physically controlled his vehicle. The presentment reads, in pertinent part, "[D]efendant . . . unlawfully did drive or physically control a motor vehicle . . ." He argues this disjunctive presentment allows a conviction by less than a unanimous verdict. The defendant's argument is misplaced. Tennessee Code Annotated section 55-10-401(a)(1) states in pertinent part, "[I]t is unlawful for any person to drive or be in physical control of any automobile . . ." We agree with the State that this plain language provides that the statute can be violated by one of two types of action. Furthermore, Tennessee Code Annotated section 40-13-206(a) states, "[W]hen the offense may be committed by different forms, by different means or with different intents, such forms, means or intents may be alleged in the same count in the alternative." That is exactly what was done in this presentment. The different forms and means of driving under the influence were included in the same count. We conclude this issue is without merit.

**(4)    Voir Dire was improperly limited by disallowing the defendants form asking prospective jurors their opinion concerning potential incarceration.**

The defendant argues the trial court wrongfully prevented him from asking prospective jurors whether the potential for incarceration for this offense would have any effect on their deliberations. While the defendant is correct in pointing out that Tennessee Code Annotated section 22-3-101 gives parties in a criminal case an "absolute right" to examine prospective jurors, he also points out that section limits its application with the language "[n]ot withstanding any rule of procedure or practice of court to the contrary." Id.

Tennessee Code Annotated section 40-35-201(b) states in relevant part, "[I]n all contested criminal cases . . . the judge shall not instruct the jury, nor shall the attorneys be permitted to comment at any time to the jury, on possible penalties for the offense charged . . ." The defendant

even points us to this statute but then asks us to conclude the trial court erred in disallowing the questions to the prospective jurors about incarceration, due to the wide latitude they are allowed. The trial court, in disallowing jury questions about potential incarceration, did exactly as Tennessee Code Annotated section 40-35-101(b) required. We conclude this issue is without merit.

**(5)     The defendant was improperly disallowed in inquiring prospective jurors about their opinion as to refusal to submit to a breathalyzer.**

The defendant attempted to ask prospective jurors if they would trust their freedom to a machine. The trial court disallowed this question as being too close to the facts of the case. The trial court did allow general questions about breathalyzers. The defendant argues this disallowance was in error since Tennessee Code Annotated section 22-3-101 allows a broad leeway in the questioning of prospective jurors. Nonetheless, as discussed above, that leeway is still subject to other rules and limitations found in the Tennessee Code.

Tennessee Rule of Criminal Procedure 24(a) provides that the court "[s]hall permit questioning by the parties for the purpose of discovering bases for challenge for cause and enabling an intelligent exercise of peremptory challenges." However, this questioning is still subject to the sound discretion of the trial court. See State v. Michael Wayne Howell, 868 S.W.2d 238, 247 (Tenn. 1993). Absent abuse of that discretion, we will not disturb the action of the trial court. Indeed, as our supreme court stated in State v. Irick, "It is the duty of the trial judge to participate in the examination of prospective jurors. The conduct of voir dire examination in a criminal prosecution is entrusted to his discretion. Tenn. R. Crim. P. 24. His actions in the conduct of voir dire examination will not be disturbed unless there is an abuse of that discretion." 762 S.W.2d 121, 125 (Tenn. 1988), *cert. denied* 489 U.S. 1072, 109 S. Ct. 1357, 103 L. Ed. 2d 825 (1989). We agree with the State that the action of the trial court in disallowing voir dire questioning about whether a juror would trust his freedom to a machine was not an abuse of discretion. The trial court stated that such a question was too close to the facts of the case and even allowed a more general question about the juror's opinions toward a breathalyzer. We conclude that disallowing voir dire questions that approached actually trying the case during jury questioning was not an abuse of discretion. Additionally, even if we felt this question should have been allowed, we conclude its disallowance was not prejudicial, since there was ample evidence in which a jury could convict this defendant of DUI outside any evidence concerning breathalyzers.

**(6)     The prosecution improperly elicited evidence concerning a passive alcohol testing flashlight.**

During Trooper Cash's testimony, he made reference to use of a passive alcohol sensor flashlight. The defendant objected to use of the flashlight as evidence and, after an initial overrule, the trial court sustained the objection. The defendant now argues that such scientific evidence should not have been introduced because it has not been proved to be reliable. We need not address that question. The trial court *sustained* the defendant's objection to the flashlight as evidence. It was

not allowed in. The defendant offered no evidence of prosecutorial misconduct, nor does the record reflect any. The defendant stresses that this was a "close case" and, therefore, even the passive mention of the flashlight may have "tipped the balance in the minds of the jurors." Absent any offering of affirmative proof beyond that, we simply cannot agree. We conclude that introduction of the passive alcohol sensor flashlight was properly objected to, and that objection was properly sustained.

**(7)      The trial court improperly charged the jury as to "reasonable doubt."**

The trial court charged the jury concerning reasonable doubt with the following pertinent language, "[W]hile absolute certainty of guilt is not demanded by the law to convict of any criminal charge, *reasonable* certainty is required," (emphasis added). The defendant argues that use of the term "reasonable certainty," as opposed to "moral certainty," reduces the burden of proof to a degree inconsistent with due process. We disagree.

Due process requires a defendant be found guilty beyond a reasonable doubt. However, in a jury charge, there is no specific form required as to defining what reasonable doubt is. The United States Supreme Court stated, "[I]ndeed, so long as the court instructs the jury on the necessity that the defendant's guilt be proved beyond a reasonable doubt, the Constitution does not require that any particular form of words be used in advising the jury of the government's burden of proof. Rather, 'taken as a whole, the instructions [must] correctly convey the concept of reasonable doubt to the jury (citations omitted).'" Victor v. Nebraska, 511 U.S. 1, 5, 114 S.Ct. 1239, 1243, 127 L. Ed. 2d 583 (1994).

Furthermore, while Tennessee Pattern Jury Instruction 2.03 includes the language "moral certainty" in the context of reasonable doubt, Tennessee Pattern Jury Instruction 2.03(a) provides alternative language that does not use the term "moral certainty" and has continuously withstood challenges to its constitutionality. We conclude the trial court's use of the term "reasonable certainty," as opposed to "moral certainty," as a prerequisite to finding guilt beyond a reasonable doubt, does no injustice to due process. Accordingly, we hold this issue is without merit.

**(8)      The trial court improperly charged the jury about inferences to be made from the defendant's refusal to take a blood alcohol test.**

The trial court charged the jury as follows:

[I]n this case, there was evidence the defendant was requested to take a test to determine the alcohol content of his blood. When there is evidence a person has been requested to take such a test and the consequences of refusal have been explained to him or her, the jury may consider a refusal as evidence of the defendant's belief that

submitting to the test would have produced unfavorable results. You are never required to make this inference. It is for the jury to determine, after a consideration of all the evidence, whether to make the inference which the law permits, the correctness of the inference and weight is to be given to such evidence. Also, the inference may be rebutted by other evidence and circumstances.

The defendant argues that such an instruction, allowing for a jury to make inferences, is erroneous. In support of his argument, he offers United States v. Leary, where the Supreme Court stated that "[a]n inference is 'irrational' or 'arbitrary' and hence unconstitutional, unless it can at least be said with substantial assurance that the presumed fact is more likely than not to flow from the proved fact on which it is made to depend." 395 U.S. 6, at 36 (1969).

Tennessee courts have recognized that this jury instruction is proper, as a refusal to submit to a blood alcohol test is probative of the defendant's guilt. This Court stated, "[W]hen there is evidence that a defendant has refused to submit to a blood alcohol test after being advised of the consequences of a refusal, the trial court shall instruct the jury it may consider the refusal as probative of guilt (citations omitted)." See State v. Bobby J. Young, No. M1998-00402-CCA-R3-CD, 1999 Tenn. Crim. App. LEXIS 1241, at *12-13 (Tenn. Crim. App. December 15, 1999, at Nashville) (perm. to appeal denied July 17, 2000). In the instant case, Trooper Cash explained to the defendant the ramifications of a refusal to submit to the breathalyzer. The defendant still refused. Additionally, the trial court expressly charged that an inference could be made, but did not have to be. The inference was properly charged. This issue is without merit.

**Conclusion**

This defendant was properly arrested for, charged with, and convicted of DUI. Although he argues to the contrary, there is little presented to combat the findings of the trial court, which properly conducted this trial. The defendant suffered no prejudice. Accordingly, the judgment of the trial court is affirmed.

_____
JOHN EVERETT WILLIAMS, JUDGE