Lynn POPE, Plaintiff-in-Error,

v.

STATE of Tennessee, Defendant-in-Error.

Court of Criminal Appeals of Tennessee.

June 16, 1975.

Certiorari Denied by Supreme Court Sept. 8, 1975.

**56**

Billy W. Townsend, Hohenwald, for plaintiff-in-error.

R. A. Ashley, Jr., Atty. Gen., R. Jackson Rose, Asst. Atty. Gen., Nashville, Elmer D. Davies, Jr., Dist. Atty. Gen., Franklin, Douglas T. Bates, III, Asst. Dist. Atty. Gen., Centerville, for defendant-in-error.

## OPINION

DUNCAN, Judge.

The defendant has appealed from his misdemeanor conviction and judgment based thereon for the offense of "Interfering with an Officer".

In his first assignment of error, the defendant alleges that the presentment does not state a statutory offense.

The presentment in this case charged: The Grand Jurors for the State of Tennessee, duly elected, empaneled, sworn and charged to inquire for the body of the County of Lewis, and the State aforesaid upon their oath aforesaid, present that Lynn Pope heretofore, to-wit, on the 3rd day of December 1973, before the finding of this indictment, in the county aforesaid, unlawfully, knowingly and willfully did oppose one James Johnston and one Kenneth Mash, duly appointed, qualified and acting police officers of the City of Hohenwald, Tennessee, who were then and there arresting Kenneth Jackson and Michael Cross for the offense of breaking into a bank in the City of Hohenwald, being committed then and there in the presence of said officers, said opposing said officers consisted of holding the arm of Officer Johnston and causing confusion by shouting and otherwise attempting to hinder said officers in making said arrest; against the peace and dignity of the State.

Since the officers were not armed with a legal writ or process, then T.C.A. § 39–3104 (resisting officer serving process) would not apply. *Maverty v. State*, 78 Tenn. 729; *State v. Wright*, 164 Tenn. 56, 46 S.W.2d 59.

Thus, we agree that the presentment does not charge a statutory offense, but it does state a common law offense. 58 Am. Jur.2d, *Obstructing Justice*, §§ 10 and 12, and 67 C.J.S. *Obstructing Justice* § 5. See also cases therein cited. In Tennessee, where no statute is in force, then common law crimes are recognized. *Goff v. State*, 186 Tenn. 212, 209 S.W.2d 13.

■ Interfering with an officer while in the performance of his duties is a common law offense in Tennessee and is recognized as such by *State v. Wright*, supra. As stated in the *Wright* case, for an indictment to be valid it must allege that (1) the officer was acting lawfully; (2) the official character of the officer; and (3) the nature of the resistance by reciting facts relative thereto.

In *Wright*, the court held the indictment did not contain sufficient allegations to make out the offense under T.C.A. § 39–3104, nor did it contain sufficient criteria as above stated to state a common law offense; however, the instant presentment is much broader, and it does allege all of the criteria required by the *Wright* case.

■ We think this presentment alleges the necessary facts to constitute the offense alleged. T.C.A. §§ 40–1802 and 40–1805.

■ Also, it is helpful to keep in mind that Tennessee courts have long held that misdemeanor indictments require somewhat less specificity than felony indictments. The same strictness of averment is not necessary in an indictment for misdemeanors as in felonies. *Sanderlin v. State,* 21 Tenn. 315; *Estep v. State,* 183 Tenn. 325, 192 S.W.2d 706; *State v. Hughes,* 212 Tenn. 644, 371 S.W.2d 445. A substantial description is all that is required in misdemeanor indictments. *State v. Kilgore,* 25 Tenn. 44; *State v. Pennington,* 40 Tenn. 119; *State v. Odam,* 70 Tenn. 220; *McLemore v. State,* 215 Tenn. 332, 385 S.W.2d 756.

Applying the foregoing principles of law to the presentment at hand, we are of the opinion that the allegations made therein well state a common law misdemeanor of "interfering with an officer while in the performance of his duties".

The first assignment is overruled.

In his second assignment, the defendant contends that the court's charge was materially at variance with the presentment and the proof.

The trial judge, even though he was charging on a misdemeanor, gave a full detailed charge to the jury.

■ The defendant made no objection to the charge at the trial and offered no special requests. Therefore, he is precluded from now complaining about the charge. *Turner v. State,* 188 Tenn. 312, 219 S.W.2d 188; *Cook v. State* (Tenn.Cr.App.), 506 S.W.2d 955.

■ Nevertheless, we have reviewed the court's charge and we conclude that he adequately covered the law on the common law offense involved. Looking at the entire charge, we feel that it was not inconsistent with the presentment and the proof.

The defendant's second assignment is overruled.

In his third assignment of error, the defendant alleges that the judgment entered by the court was materially at variance with the indictment and the proof.

■ As will be reflected hereinafter, under the assignment on the evidence, the proof was consistent with the allegations in the presentment. The jury returned a general verdict of guilty. This was a one count presentment and the general verdict of guilty will be applied to the offense which is alleged in the presentment and which is sustained by the evidence and proof. This presentment, as we have held, charges a common law offense of "interfering with an officer while in the performance of his duties", and the evidence and proof make out this charge. Accordingly, we apply the verdict and judgment to this offense. T.C.A. § 40–2519; *Mendolia v. State,* 192 Tenn. 656, 241 S.W.2d 606.

The third assignment is overruled.

In his fourth, fifth and sixth assignments of error, the defendant alleges that the proof was not sufficient to support the verdict and that there was a material variance between the presentment and the proof.

In considering these assignments, we must scrutinize the proof, which is summarized as follows:

On December 3, 1973, a burglary of a bank in Hohenwald was taking place. Officers arrived on the scene and saw windows broken out and observed two (2) persons running from the bank. The officers arrested one of the fleeing individuals nearby, and he was placed in a police car. The officers, being of the belief that another or others were still in the bank, were in and about their duties in an attempt to ferret them out of the bank. At this juncture, the defendant, Lynn Pope, and several friends came up to the scene in an automobile. Officer Kenneth Mash testified that Pope's friend, Muriel Cowie, got out of the car. The defendant Pope testified that he, himself, got out of the car on this first occasion. At any rate, all of the individuals in the car,

including Pope, were told by the officers to leave the scene. They left, and according to the State's proof, returned in just a few minutes, and Pope got out of the car, was "hollering" and wanted to talk the others, thought to be inside, out of the bank. Contrary to everyone's belief, and as it later turned out, there were no other individuals in the bank. At any rate Pope and his friends were again told to leave the scene and they did. In a couple of minutes the car returned, but Pope was not in it. Cowie got out of the car, had some words with one of the officers, and the car left going up the street "about a block". At this time, Pope returned to the scene on foot, "hollering" and using "profanity", remonstrating with the officers to the effect that "all you God Damn people want to do is kill us anyway". At this point, according to Trooper James Dyer's testimony, he arrested Pope "for interfering, he was causing a lot of confusion right there at the bank". Trooper Dyer then testified that as he started to the car with Pope, he (Pope) grabbed Officer Johnson by the arm or shoulder. Trooper Dyer then fired his shotgun in the air, and Pope went on to the car.

The defendant Pope testified that he was a friend to all of the individuals in the car, and also a close associate of Mike Cross, who had been arrested; that he was also a friend to a Kenny Jackson, whom he thought to still be in the bank; that he had been on the scene on four occasions, but that one time the car just passed by real slow, without stopping. He admitted that he had been told by the officers to leave on the first two occasions; that he was aware that the officers had arrested Mike Cross and had him in the police car; that he may have used some profanity, but denied that he interfered with the officers, and denied he grabbed Officer Johnson; and that his concern was the safety of his friends.

■ In considering and passing upon an assignment of error challenging the sufficiency of the evidence to warrant and sustain the verdict of the jury in criminal cases, this Court is bound by the rule that a conviction will not be reversed on the facts unless it is shown by the defendant that the evidence preponderates against the verdict and in favor of his innocence. *McBee v. State*, 213 Tenn. 15, 372 S.W.2d 173; *Schweizer v. State*, 217 Tenn. 569, 399 S.W.2d 743; *McGhee v. State*, 3 Tenn.Cr. App. 324, 460 S.W.2d 875.

The jury, by their verdict accredited the testimony given by the State's witnesses.

Applying this evidence to even that portion of the presentment that charges the defendant did oppose and hinder the officer in arresting "Mike Cross", it compels us to conclude that the defendant did interfere with the officers while in the performance of their duties. While Mike Cross had been arrested and placed in the police car when the defendant appeared on the scene, such arrest was still in progress. The mere fact that Cross was in the police car did not terminate the arrest at that point. An arrest is a continuing process from the time one is apprehended until he is placed in jail.

■ In *State of North Carolina v. Leak*, 11 N.C.App. 344, 181 S.E.2d 224, the defendant was arrested on a warrant and taken before a magistrate and after proceedings there, he was being escorted to jail when he struck one of the arresting officers. In affirming his conviction for resisting arrest, the court held:

> "We hold that an 'arrest' does not necessarily terminate the instant a person is taken into custody; arrest also includes 'bringing the person personally within the custody and control of the law'. The arrest of defendant in the instant case did not terminate until he was delivered to the jailer and properly confined."

We find no Tennessee case that delineates just when an arrest is completed, but it seems elementary that an arrest is not completed until the arrestee is placed in jail. We conclude that the law on this point is well stated in the *Leak* case, and we adopt it as applicable to the case at hand.

As to the question of interfering with these officers in the performance of their duties, it is significant to note that at one point in Officer Mash's interrogation by the attorney general, he was asked, "Was Mr. Pope's actions or was it not hindering you in your work?" Officer Mash replied, "Yes, sir, very much."

Again on cross-examination, the record reflects the following telling testimony from Officer Mash:

"Q Well how were you trying to get them out of there, did you have a fog horn or anything?

A Our cars are equipped with them.

Q Are you using it?

A *No, because they was causing such disturbance that we had to stop what we were doing to do something with them, we couldn't have people everywhere up at the time in the situation it was.* (Emphasis ours.)

Q You were trying to clear the streets in otherwise?

A Yes, sir, we was trying to get the people back because we didn't know what we had."

■ While, as a general proposition, mere arguments or remonstrances are not sufficient to constitute the offense of interfering with an officer in the performance of his duties, nevertheless it has been held that such may become sufficient where their intensity, or the totality of several acts, is such as to amount to an interference with the officer. See 44 A.L.R.3d 1018, 1035, and cases there cited.

■ Unquestionably, in all jurisdictions, if force is involved, the offense is complete. In the instant case, the evidence shows that not only was the defendant interfering by hollering, screaming and cursing, but he also used force by grabbing the arm of one of the officers, at a time when the arrest of Cross was still in progress. *State of North Carolina v. Leak,* supra.

Certainly, law abiding citizens should be encouraged to aid the police in their arduous tasks, but when one appears on the scene of a difficulty and acts as the defendant did on this occasion, then he is not behaving as a helping hand to the police officers and he cannot so act with impunity. In this case, these officers were confronted with an extremely serious situation at the bank, and in spite of repeated harassment and interference by the defendant, they acted with unusual restraint until the defendant's actions compelled them to arrest him.

The evidence makes out the common law offense as charged in the presentment. It does not preponderate against the verdict, and we overrule the assignments on the evidence.

■ In the defendant's seventh assignment, he contends the court erred in ruling that the issue of defendant's identity was not relevant or material.

At the trial stage it was left unclear just what point the defendant was attempting to establish. Some reference was made by defendant's counsel that at the jail, a person, other than the defendant, was referred to by one of the officers as being the defendant Pope. At the hearing of the motion for a new trial, the court permitted the testimony of Muriel Cowie to be entered in the record. Cowie testified that he had been in a car with the defendant Pope on the night of the incident and that he was the person ordered to leave the bank's premises both times. He also testified that he had been identified in jail as being Lynn Pope, and that both he and Pope had a full beard. This testimony strikes us as being a distinction without a difference. It will be recalled that Officer Mash stated that the defendant, Cowie and others came up in the car on the first occasion; that Cowie got out and was told to leave and "they did"; that they returned, and Pope got out and was asked to leave; and that the car came back and Cowie got out on that occasion. We agree with the trial judge that the question of identity was not an issue.

It is clear from the State's proof that Cowie and Pope were together, in company on the scene, on at least three occasions. The defendant Pope, in his testimony, admitted that he, himself, was on the scene on four occasions, and admitted that on two occasions he was asked to leave. The fact, if it be a fact, that Cowie was also asked to leave, is of no significance.

We find no merit to this assignment.

In his eighth assignment of error, the defendant alleges that he was unduly prejudiced because of the remarks and arguments of the prosecuting attorney.

█ The record reflects that no objection was taken by the defendant to the arguments of the attorney general at the trial, and thus we are precluded from considering same. *Harper v. State,* 206 Tenn. 509, 334 S.W.2d 933; *Turner v. State,* supra; *Staggs v. State,* 210 Tenn. 175, 357 S.W.2d 52.

█ In his last assignment, the defendant says the verdict shows malice and caprice on the part of the jury. The punishment assessed was within the limits provided by law for this misdemeanor offense. We are of the opinion that the punishment was fair, just and reasonable, under the facts and circumstances present in this case. *Hardin v. State,* 210 Tenn. 116, 355 S.W.2d 105; *Wheeler v. State,* 220 Tenn. 155, 415 S.W.2d 121.

Thus, from all of the foregoing, we conclude that there are no errors in this record. We affirm the defendant's conviction.

O'BRIEN, J., concurs.

GALBREATH, J., dissents.

GALBREATH, Judge (dissenting).

After a careful study of the proof set forth in the record before us in this appeal from the Lewis County Criminal Court, I am of the opinion the trial judge should have granted the motion made on behalf of the plaintiff in error to direct a verdict of not guilty.

The Presentment charged:

"The Grand Jurors for the State of Tennessee, duly elected, empaneled, sworn and charged to inquire for the body of the County of Lewis, and the State aforesaid upon their oath aforesaid, present that Lynn Pope heretofore, to-wit, on the 3rd day of December 1973, before the finding of this indictment, in the county aforesaid, unlawfully, knowingly and willfully did oppose one James Johnston and one Kenneth Mash, duly appointed, qualified and acting police officers of the City of Hohenwald, Tennessee, who were then and there arresting Kenneth Jackson and Michael Cross for the offense of breaking into a bank in the city of Hohenwald, being committed then and there in the presence of said officers, said opposing said officers consisted of holding the arm of Officer Johnston and causing confusion by shouting and otherwise attempting to hinder said officers in making said arrest; against the peace and dignity of the State.

There was no proof adduced that the officers were in the process of arresting either Kenneth Jackson, Michael Cross or any other person at the time the defendant offered his services to officers surrounding a bank in Hohenwald which one or more of the defendant's friends were suspected of having entered earlier following a party attended by the defendant and a group of young friends. Michael Cross had been arrested earlier and there is nothing in the record to suggest that the defendant's rather persistent and concededly troublesome efforts to aid the police interfered in any manner in that accomplished fact. Cross had run out of the bank building with an unidentified companion and had been arrested and placed in a police car. While I agree with the majority that the arrest of a resisting suspect is a continuing procedure until the resistance is overcome, surely under the circumstances of this case the arrest of Cross had been completed. There is no

intimation that the defendant's actions were intended in any manner to obtain the release from custody of Cross. On the contrary it must be conceded that they were designed ultimately to bring about the arrest of another friend of the defendant since both he and the officers thought there was a good possibility that Kenneth Jackson was in the building. However, there is no showing in the record that he was or that any interference was made by anyone in the officers' attempt to arrest Jackson, if indeed such an attempt was made.

The proof does show that the defendant was ordered to leave a number of times, together with other occupants of an automobile in which they came to the scene and left at least three times before the defendant returned a fourth time and was arrested, but outside of admitted loud talking and profanity on the part of the defendant nothing is found in the proof that would constitute an interference with the officers in making arrests of anyone as charged in the presentment.

Undoubtedly, it is wise in most instances for one to accede to a request of a policeman or fireman to clear an area of potential danger, but if a citizen chooses to risk the chance of harm by dashing into a burning building in a foolhardy rescue attempt or to engage in efforts to persuade a person suspected of crime concealing himself in a building to give himself up to lawful authority, this would hardly constitute a crime. Far from interfering with efforts that might have been made to arrest one who may have been hiding from police in the bank building, it would appear that the defendant was trying to get such a person, if he was in the bank, to come out peaceably. It is regrettable that more citizens do not offer their cooperation and assistance to police. In any event, we have not yet reached a state in our hopefully free society where citizens may be ordered off the public streets at the whim of a police officer. It has been observed that there are only two forms of society in the world—those in which the people are subservient to police and those in which the police are subservient to the people. We have embraced the latter concept of government.

Proof was offered by the State that the defendant as he was being led by the arresting officer to a police car "grabbed" another officer by the arm, but there was no averment that this brief touching was for the purpose of obstructing either of the policemen present in the performance of their duties, and specifically in making the arrests the presentment charges he hindered. It could just as well have been an effort to attract the officer's, whose arm was taken hold of, attention to what the defendant considered an unwarranted interference with *his* legitimate efforts to assist law enforcement officers and secure the apprehension of whomever might have been in the bank without bloodshed as he made plain was his purpose.

I would not, under the absence of proof in this case of any illegal action on the part of the defendant, permit him to be incarcerated for eleven months and twenty-nine days as sentenced. It may be, as the District Attorney General intimated in cross examination of the defendant, that he was involved in the breakin of the bank or had at least known his friends were planning such unlawful activity. He was not charged in the presentment with participation in that crime, and the State should not, in my opinion, be permitted to convict and punish him without proof that a crime was committed and that the defendant was guilty of committing it.

Many citizens find themselves in disagreement with police officers from time to time. To express this disagreement, even in argumentative fashion, is no crime. In reversing a conviction for disorderly conduct based on vocalized disagreement with a policeman the United States Supreme Court said:

> "We find no evidence whatever in the record to support these convictions. Just as 'Conviction upon a charge not made would be sheer denial of due process,' so

it is a violation of due process to convict and punish a man without evidence of his guilt." *Thompson v. City of Louisville*, 362 U.S. 199, 80 S.Ct. 624, 4 L.Ed.2d 654.

Whatever the jury found reprehensible in the defendant's conduct was not charged in the presentment, nor in my opinion proscribed by the common law.

I, therefore, respectfully dissent.