STATE of Missouri, Respondent,

v.

James David MALLETT, Appellant.

No. KCD 28105.

Missouri Court of Appeals,
Kansas City District.

Oct. 12, 1976.

Michael L. Midyett, Keytesville, for appellant.

John C. Danforth, Atty. Gen., Douglas G. Mooney, Asst. Atty. Gen., Jefferson City, for respondent.

Before DIXON, P. J., PRITCHARD, C. J., and WASSERSTROM, J.

WASSERSTROM, Judge.

Defendant was convicted by jury of striking a police officer while engaged in the

performance of duties imposed upon him by law, a violation of § 557.215. (All statutory references are to RSMo 1969.) On this appeal, he assigns as error: (1) that the trial court erred in overruling defendant's motion for judgment of acquittal at the close of State's case because there was no evidence to show that Trooper Jerry W. Griffin was engaged in the performance of duties imposed upon him by law at the time of the alleged assault upon him by the defendant; and (2) that the trial court erred in refusing to give defendant's instruction on common assault.

At approximately 2:00 a. m., February 7, 1974, State's witness Wesley Rhodes, an ambulance driver, found the defendant slumped behind the steering wheel of an automobile on Missouri Highway 5 between Brookfield, Missouri, and Marceline, Missouri. Rhodes called the Brookfield, Missouri Police Department with the radio in his ambulance, asking that the Marceline Police and "the trooper" be sent to that location. In response to that call, Officer Griffin of the Missouri State Highway Patrol was dispatched to the location in question. He arrived at approximately 2:10 a. m., and arrested defendant for driving while intoxicated. He put handcuffs on defendant and placed him in his patrol car, but before proceeding to the Brookfield, Missouri police station Griffin removed the handcuffs from defendant because they cut off defendant's circulation.

Griffin arrived at the Brookfield, Missouri police station with defendant at approximately 2:20 a. m. As Griffin processed the arrest he gave defendant a cup of coffee, at defendant's request, which defendant drank. Griffin finished processing the arrest at approximately 4:00 a. m. Defendant was cooperative during this booking procedure.

The Brookfield police station is located in the Brookfield Municipal Building, approximately 75 feet south of the Brookfield City Jail. After Griffin completed booking defendant, he gave defendant another cup of coffee, again at defendant's request. Griffin then proceeded to take defendant toward the city jail. When the two of them arrived at the jail and as Griffin was unlocking the jail door, defendant threw the cup of coffee into the left side of Griffin's face. Defendant then ran down an alley. Griffin caught defendant about 30 feet from the jail. Griffin testified that after he had caught him, defendant struck him on the arm and the chin and threw Griffin to the ground, with defendant falling on top of Griffin. Defendant attempted to take Griffin's service revolver from its holster. However, the trooper pushed defendant off, pulled out his service revolver and subdued defendant. Griffin testified that Wesley Rhodes and Dale Jacobs, the police dispatcher, then came out since Griffin had been yelling for aid. Rhodes and Jacobs then assisted Griffin in opening the jail door and placing defendant in jail.

The evidence just summarized plainly shows that at the moment when defendant struck Griffin with the coffee and shortly later when he hit Griffin with his fists, Griffin was actively engaged in duties imposed upon him by law. Attempting to argue to the contrary, defendant points to the following which was elicited from Griffin on cross-examination:

"Q  So, after you go through your booking process that you have, you're basically finished with the person, up to that point; isn't that correct?

A  Basically, yes, sir."

At best, this testimony is equivocal. Although the officer may be "basically" finished with the arrest after booking, he did not indicate he was completely finished with the individual. This does not deny his earlier statements that placing defendant in jail was part of his duties:

"Q  Was it part of your duties to put Mr. Mallett in jail?

A  It was.

\*        \*        \*        \*        \*        \*

Q  . . . You are charged with the incarceration of prisoners?

A  That is my duty, yes, sir."

Also, on cross-examination, Griffin indicated he was charged with the incarceration

of prisoners in the jail but not required to guard them.

■ Clearly, on direct examination Griffin indicated it was part of his duties to put defendant in the jail. Reviewing the evidence under the classic standard of viewing the record and all permissible inferences favorably to the verdict rendered, the State in the direct examination of Griffin made a submissible case on the issue of whether he was engaged in duties imposed upon him by law when he was assaulted. The credibility of Griffin's testimony on both direct and cross-examination, and all reasonable inferences to be drawn therefrom, was exclusively for the jury. *State v. Webb*, 423 S.W.2d 795 (Mo.1968); *State v. Johnson*, 447 S.W.2d 285 (Mo.1969).

■ Also it appears that on these facts when defendant assaulted Griffin, the officer was engaged in the performance of duties imposed upon him by law as a matter of law. Sections 43.180 and 43.190 grant to the Missouri State Highway Patrol the power to arrest without a warrant any person they detect violating any laws of Missouri. Section 544.180 defines an arrest as:

"An arrest is made by an actual restraint of the person of the defendant, or by his submission to the custody of the officer, under authority of warrant or otherwise."

In *State v. Sampson*, 408 S.W.2d 84 (Mo. 1966) the court said:

"A person may be said to be under arrest from the moment a police officer takes control of his movements."

*State v. Stokes*, 387 S.W.2d 518 (Mo.1965) adopted the same definition of an arrest, saying:

". . . defendant was under arrest from the time the officer took control of his movements."

When Griffin first encountered defendant on Missouri Highway 5, he told defendant that he was under arrest for driving while intoxicated. Griffin placed defendant in his patrol car. Initially he put handcuffs on defendant. The Trooper then took defendant to the Brookfield police station. This evidence is unchallenged by defendant. It seems clear, then, in light of the above statute and cases, that when Griffin encountered defendant on Highway 5 he placed defendant under arrest for a violation of § 564.440, i. e., he took control of defendant's movements and defendant submitted to the custody of the officer.

Although no Missouri case law has been found dealing squarely with the duration of an arrest once it has been effected, *State v. Leak*, 11 N.C.App. 344, 181 S.E.2d 224 (1961) is factually extremely close to the instant case. In *Leak*, the defendant was taken to the police station, under a warrant, where he was booked. He was taken before a magistrate who did not waive the $100 bond. As the arresting officer led the defendant to the jail, the defendant struck the arresting officer with his fists. A fight ensued after which the defendant was placed in jail. The defendant was convicted of assault on a public officer. The North Carolina Court of Appeals held:

"We hold that an 'arrest' does not necessarily terminate the instant a person is taken into custody; arrest also includes 'bringing the person personally within the custody and control of the law.' The arrest of defendant in the instant case did not terminate until he was delivered to the jailer and properly confined. The assignment of error is overruled."

In *Pope v. State*, 528 S.W.2d 54 (Tenn.Cr. App.1975) the defendant was convicted of interfering with a police officer in the performance of his duties. The officer placed a friend of the defendant under arrest and inside his patrol car. A few minutes later the defendant began yelling at and grabbing the officer. In deciding whether the officer was still in performance of his duties after placing the arrestee in the patrol car, the court said:

"An arrest is a continuing process from the time one is apprehended until he is placed in jail."

*State v. Shirley*, 233 Mo. 335, 135 S.W. 1 (1911) expresses a view conforming with the foregoing authorities:

"The law does not make the justice of the peace a jailer, and, if defendant was arrested by the constable upon a warrant regularly issued on a criminal charge, he remained in the custody of such constable until released under recognizance, discharged by order of the justice, or delivered to the jailer of the county."

An arrest by a peace officer therefore continues so long as the arresting officer has the custody and control of the arrestee's movements for the purpose of delivering the person arrested into incarceration to be held to answer the particular charge. In the instant case Griffin was still actively engaged in the custody and control of defendant as he escorted defendant toward the Brookfield jail. Indeed, he was taking defendant to the jail so that defendant could be available in order to answer particular charges for which the officer had taken him into custody. Therefore, when defendant assaulted Griffin, he struck an officer actively engaged in the performance of duties imposed upon him by law and thereby violated § 557.215.

Defendant's argument that Griffin was not actively engaged in the performance of duties imposed upon him by law when he was struck by defendant because the trooper was acting as a jailer at that time is not tenable. He has cited no case law to support that contention. As indicated above, Griffin was actively engaged in the custody and control of defendant and he had not yet delivered defendant to the jail. The arrest continued until Griffin delivered defendant to jail. *State v. Leak, supra; Pope v. State, supra; State v. Shirley, supra.* Therefore, Griffin was within the ambit of § 557.215 when he was assaulted.

There is another reason why Griffin was in performance of his duties when the scuffle with defendant occurred. After throwing the coffee in Griffin's face, defendant attempted to escape. This constituted a separate criminal offense under § 557.390, committed in Griffin's presence, which gave rise to authority and a duty on Griffin's part to pursue and arrest. On this additional ground, Griffin was within the scope of § 557.215 when defendant resisted with physical violence.

■ Defendant's second contention, regarding the refused instruction on common assault, is answered by *State v. Ross,* 492 S.W.2d 792 (Mo.1973), where the defendant was convicted under § 557.215. The defendant had struck with his fists a police officer as the defendant was being led to jail after booking. The officer the defendant hit was not the arresting officer; he merely was passing the defendant in the hallway. At trial the defendant requested an instruction on common assault which was refused. Considering the defendant's contention that the trial court erred in refusing the common assault instruction, the court said:

"In ruling this contention we will assume, but do not decide, that common assault is a lesser included offense of the crime charged. . . . The evidence clearly indicates that Officer New was engaged in the performance of his duties as a police officer at the time he was struck. . . . We accordingly rule that the evidence did not warrant an instruction on common assault and hence the court did not err in failing to give one."

Likewise in *State v. Jacks,* 462 S.W.2d 744 (Mo.1971) the defendant was convicted for violation of § 557.215. On appeal the court found the evidence sufficient that the officer was engaged in the performance of duties imposed upon him by law at the time of the assault. The trial court refused the defendant's instruction on common assault. The defendant assigned error to this refusal. The court said:

"As above held, and as the state contends, there was no evidence that would justify a finding that Ellis was not acting as a police officer, engaged in his duties, at the time he was assaulted. Hence the court was not required to give the instruction on common assault."

Similarly, the court in *State v. Taylor,* 498 S.W.2d 614, 617 (Mo.App.1973) in considering exactly this contention held:

"Defendant further contends that it was error for the trial court to refuse to

instruct the jury on the lesser included offense of common assault since the evidence as presented would have supported such a charge. Section 557.215 RSMo 1969, V.A.M.S., is directed to all willful assaults on police officers. There is no lesser included offense where a striking is shown and no controversy appears over whether the victim was a police officer or engaged in the performance of his duties. Under this state of facts the court is not required to give an instruction on common assault. *State v. Jacks*, 462 S.W.2d 744, 748[7] (Mo.1970)."

See also *State v. Watson*, 364 S.W.2d 519, 522 (Mo.1963); *State v. Barton*, 142 Mo. 450, 44 S.W. 239 (Mo.1898); *State v. Schloss*, 93 Mo. 361, 6 S.W. 244 (Mo.1887); *State v. Webb*, 518 S.W.2d 317 (Mo.App.1974).

Taking all the State's evidence as true, the defendant could be convicted on this evidence for no offense other than striking a police officer while engaged in the performance of his duties. Because the evidence does not support an instruction on common assault under the authority cited above, defendant's second point is denied.

Affirmed.

All concur.