**CITY OF SEDALIA, Missouri,
Respondent,**

v.

**Gary RUSSELL, Appellant.**

**No. WD31561.**

Missouri Court of Appeals,
Western District.

Oct. 20, 1981.

M. Craig Cassing, Santa Ana, Cal., Jonathan D. Cope, Sedalia, for appellant.

Kenneth M. Dake, Sedalia, for respondent.

Before KENNEDY, P. J., and SHANGLER and WASSERSTROM, JJ.

WASSERSTROM, Judge.

Defendant was charged with violating a city ordinance by disobeying a lawful command of a police officer. A municipal court found defendant guilty. Upon appeal to the circuit court, in a trial de novo defendant was again found guilty and was fined $250. From that judgment, defendant appeals. We affirm.

At about 10:22 p. m. on August 27, 1979, Officer Purdue was patrolling in the City of Sedalia in a police car accompanied by a trained police dog. He received a call that there was a break-in taking place at a Quik-Trip store. In response to that call, he immediately went to the scene of the break-in and arrived within 45 seconds to a minute and a half. As he drove up, he saw a brown Chevrolet truck pull out of the store's parking lot. A bystander informed Purdue that the occupants of the truck had committed the break-in and were fleeing the crime.

Purdue pursued the brown truck and eventually brought it to a halt in an alley. The truck was occupied by seven young men. Purdue started to approach the truck, when defendant pulled up to the scene on a motorcycle.

Before Purdue could even reach the truck, defendant ran up to him, stating that he was a friend of the occupants of the truck and demanded to know what Purdue intended to do. Purdue answered that he would discuss the situation with defendant later and that in the meantime defendant should get out of the way by going back to his motorcycle.

Purdue then went on to the truck where the seven suspects were milling around and asked them for identification. Defendant again came up behind Purdue, within about two feet, and continued to yell in an argumentative fashion. Purdue ordered the seven suspects to spread-eagle against the truck, and he at that time made a second request to the defendant to get out of the way by going back to his motorcycle.

Defendant then yet again approached Purdue in the same argumentative manner, and Purdue made a third request of the defendant to get back to the motorcycle. Defendant nevertheless continued his distracting yelling. Purdue went back to the police car and radioed for assistance. He at that time also took the police dog from the car and put him on a leash.

During this time defendant continued his yelling. The suspects by now had gotten out of their spread-eagle position and were again milling around. Purdue made a fourth request to defendant to get back to his motorcycle, and defendant temporarily did so.

Purdue went back to the truck and told the seven suspects to again get into their spread-eagle position. At that time defendant still once more came up behind Purdue and again began his distraction while standing within two or three feet. Purdue gave defendant a fifth order to get away, escorted him back to the position of the motorcycle and ordered him to spread-eagle against a nearby wall.

Purdue then went back to the truck where the seven suspects were again milling about and ordered them back into a spread-eagle position. He heard defendant again yelling at him and on looking around saw that defendant had left the wall and had assumed a position sitting on the motorcycle. At this, Purdue went back to defendant and charged him with disobeying the order to remain in the spread-eagle position against the wall.

Defendant's single point on appeal is that the court erred in finding a violation of the ordinance "for the reason that the command given to appellant was an unlawful command." Defendant's argument in support of that contention can be summarized by the following quotation from his brief: "The officer's action in doing more than directing appellant away from the area and restraining his freedom of movement were [sic] in excess of his lawful authority and therefore constituted the basis of an arrest without probable cause, i. e., unlawful arrest. . . . It is appellant's legal premise that the unlawful arrest invalidates the lawfulness of the officer's command."

■ As defined by defendant, the basic question for determination is whether Purdue had a right to order defendant to spread-eagle against the wall. The inquiry into this question starts with the proposition that Purdue had made a proper arrest of the seven suspects, and he had a duty to pursue that arrest diligently using whatever force became necessary. *Manson v. Wabash Railroad Company,* 338 S.W.2d 54 (Mo. banc 1960); *State v. Nolan,* 354 Mo. 980, 192 S.W.2d 1016 (1946); *State v. Nunes,* 546 S.W.2d 759 (Mo.App.1977); *Davis v. Moore,* 553 S.W.2d 559 (Mo.App.1977).

Clearly, defendant had engaged in a course of conduct which obstructed and was calculated to defeat Purdue's investigation. He persisted in coming up very close behind Purdue and arguing with him in a loud and distracting voice. That conduct tended to encourage resistance on the part of defendant's seven friends who were felony suspects, and his conduct in fact interrupted the investigation and caused those seven young men to leave their spread-eagle position against the truck and start milling around.

Faced with this situation, there can be no question but that Purdue could order defendant to desist and move away. This much is impliedly conceded by the defendant himself. Purdue did exactly that, not just once, but four times. Those were lawful commands and defendant's repeated obstruction and flat disobedience of those commands was wrongful. *See Perkins v. Wilcox,* 294 Mo. 700, 242 S.W. 974 (1922); *Kansas City v. LaRose,* 524 S.W.2d 112 (Mo. banc 1975); *City of St. Louis v. Treece,* 502 S.W.2d 432 (Mo.App.1974); *State v. Holt,* 559 S.W.2d 44 (Mo.App.1977); 18 St.L.U. L.J. 283 (1973).

■ Finally, on the fifth time that Purdue had to repeat his order, he went further and commanded defendant to spread-eagle against the wall. Under the circumstances, that was a mild reaction to a potentially dangerous situation. Purdue testified that what defendant was doing was "distracting" and "[i]t appeared to me that the situation was quickly getting out of hand." It was within Purdue's province to decide in the first instance what degree of force or other coercion was necessary in order to be able to accomplish his duty. *Manson v. Wabash Railroad Company, supra; Davis v. Moore, supra.* Purdue's decision as to how to handle the situation was restrained and judicious. In no sense can his command be considered an abuse of his discretion.

■ Defendant in argument seeks to make a point of the fact that Purdue testified that he did not intend an arrest of defendant until after the time that defendant left his spread-eagled position against the wall. For that matter, Purdue also testified that he never intended any arrest of the seven young men in the truck. To the extent that the time of those arrests makes any difference in this case, it is sufficient answer to say that Purdue's testimony just mentioned reflected a misunderstanding of the law. An arrest occurs when an officer takes control of the movements of the arrestee. Section 544.180, RSMo. 1978; *State v. Sampson,* 408 S.W.2d 84 (Mo. 1966); *State v. Mallett,* 542 S.W.2d 584 (Mo.App.1976). Accordingly, the seven suspects were arrested when they were ordered out of the truck, and defendant was arrested when he was ordered to spread-eagle against the wall.

■ Purdue's command for defendant to spread-eagle against the wall was lawful, and disobedience of it by defendant was a plain violation of the ordinance.

The judgment is affirmed.

All concur.