# IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
## AT JACKSON
### June 2, 2015 Session

## STATE OF TENNESSEE v. WILLIE NOLAN

**Appeal from the Criminal Court for Shelby County**
**No. 12-03247     John W. Campbell, Judge**

---

**No. W2014-00990-CCA-R3-CD  -  Filed October 7, 2015**

---

The Defendant, Willie Nolan, was convicted by a Shelby County jury of attempted reckless endangerment, aggravated assault, reckless aggravated assault, felony reckless endangerment, and vandalism. See Tenn. Code Ann. §§ 39-12-101, -13-102, -14-408. After merging the attempted reckless endangerment conviction into the aggravated assault conviction, the trial court imposed a total effective sentence of twenty-seven years. In this appeal as of right, the Defendant contends that (1) the trial court erred by allowing the prosecution to enter as substantive evidence the unsigned statement of a witness in violation of Tennessee Rule of Evidence 803(26); and (2) there was insufficient evidence to support the convictions for aggravated assault, reckless aggravated assault, and felony reckless endangerment.[1] After careful review of the record and applicable law, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Criminal Court Affirmed**

D. KELLY THOMAS, JR., J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and ROBERT L. HOLLOWAY, JR., JJ., joined.

---

[1] The Defendant does not challenge the sufficiency of the evidence with respect to his convictions for attempted reckless endangerment and vandalism. We note that, at the motion for new trial, the Defendant argued that attempted reckless endangerment was not a crime. The trial court responded that it had remedied the problem by merging that conviction into the aggravated assault conviction. Our supreme court has previously stated that "[i]t is impossible to conceive of an attempt where a crime by definition may be committed recklessly . . . ." State v. Kimbrough, 924 S.W.2d 888, 891 (Tenn. 1996) (determining that attempted felony murder is not an offense in Tennessee and noting that "one cannot intend to accomplish the unintended"). Based on this reasoning, we have serious concerns about the legitimacy of a conviction for attempted reckless endangerment, and the conviction for that offense survives despite the fact that it was merged into the aggravated assault conviction. See State v. Justin Brian Conrad, No. M2008-01342-CCA-R3-CD, 2009 WL 3103776, at *9 (Tenn. Crim. App. Sept. 29, 2009). Nevertheless, the Defendant does not challenge that conviction on appeal, and we will therefore not address it further in this opinion.

James E. Thomas, Memphis, Tennessee, for the appellant, Willie Nolan.

Herbert H. Slatery III, Attorney General and Reporter; Renee W. Turner, Assistant Attorney General; Amy P. Weirich, District Attorney General; and Melanie Headley, Assistant District Attorney General, for the appellee, State of Tennessee.

**OPINION**

FACTUAL BACKGROUND

On June 26, 2012, the Defendant was indicted on charges arising from an August 28, 2011 altercation with Shiquanna Whitfield, Lasondra Scott, and Sean Deadmon. In particular, the Defendant was indicted in Count 1 for the attempted second degree murder of Ms. Scott, in Counts 2 and 3 for alternative theories of the aggravated assault of Ms. Scott, in Counts 4 and 5 for alternate theories of the aggravated assault of Mr. Deadmon, in Count 6 for the aggravated assault of Ms. Whitfield, and in Count 7 for vandalism of more than $500 but less than $1,000 for damage done to Ms. Whitfield's car.

At trial, Ms. Scott testified that on August 28, 2011, Ms. Whitfield came to pick her up between 9 p.m. and 10 p.m. from Ms. Scott's mother's house. Ms. Whitfield asked Ms. Scott to ride with her as she drove the Defendant and his girlfriend Cindy, whom were already in the car, to the Tulane Apartments. The group then proceeded to Tulane Apartments, where the Defendant and Cindy exited the car.

Before Ms. Whitfield drove away, the Defendant came back to the car and asked to be dropped off at his mother's house. When he returned to the car, the Defendant was angry. According to Ms. Scott, "he was in the backseat just whooping and hollering and beating on the ceiling of the car talking about what he was going to do to me and [Ms. Whitfield]." Ms. Scott testified that the Defendant threatened her and Ms. Whitfield and that she felt scared. After about five minutes, Ms. Scott asked Ms. Whitfield to pull over and let the Defendant out of the car.

After letting the Defendant out of the car, Ms. Whitfield and Ms. Scott drove to Mr. Deadmon's house. According to Ms. Scott and Ms. Whitfield, they stood on the porch outside Mr. Deadmon's house, along with Mr. Deadmon, talking for approximately seven to ten minutes when the trio witnessed the Defendant's mother's car drive by. Ms. Whitfield opined that the Defendant's mother, who lived near Mr. Deadmon's house, was returning from picking up the Defendant. Ms. Whitfield testified that she picked up a stick from the yard when she saw the Defendant go by because the Defendant had called and threatened them. After another seven to ten minutes had passed, the Defendant came around the side of Mr. Deadmon's house carrying an approximately one-foot long, solid

-2-

pipe. According to Ms. Whitfield, as the Defendant approached, he said, "I'm fixin' to kill you b---h – I told you b---hes I was gonna get y'all . . . ."

As the Defendant ran toward Ms. Scott while swinging the pipe, Ms. Scott first swung a bat at the Defendant but missed. Ms. Scott testified that she had armed herself with the bat because of the Defendant's repeated threats. The Defendant proceeded to hit Ms. Scott numerous times on her shoulder and arms. During this ordeal, Ms. Scott attempted to escape but slipped and fell. The Defendant jumped on top of Ms. Scott and began attempting to strike her head with the pipe, but she was able to protect her head with her arms, which resulted in further injuries to both her right and left arms. Ms. Scott testified that the Defendant was wearing a black glove over the hand holding the pipe, which was apparently hot as it caused burns to Ms. Scott's arms where she was struck with it. Ms. Scott testified that during this time, she feared for her life.

While the Defendant was attacking Ms. Scott, Ms. Whitfield and Mr. Deadmon were attempting to break up the altercation. Ms. Whitfield was still armed with a stick, although she testified that the Defendant was mainly focused on Ms. Scott. During her attempt to stop the attack, Ms. Whitfield was hit on the arm with the pipe. Mr. Deadmon was struck multiple times by the Defendant while trying to prevent the Defendant from attacking Ms. Scott.

After Ms. Scott finally escaped from the Defendant, she ran inside Mr. Deadmon's house where Mr. Deadmon's mother, sister, and Ms. Whitfield were hiding. Once she was inside Mr. Deadmon's house, the Defendant picked up the bat that Ms. Scott previously held and began smashing the windows and tail lights of Ms. Whitfield's car. According to Ms. Whitfield, the Defendant said, "B---h, since I can't get you, I'll get your car." Ms. Whitfield testified that the attack lasted approximately ten to fifteen minutes.

As a result of this altercation, Ms. Scott's left arm was fractured and burned; her right forearm was broken in two places and burned; her left elbow was dislocated; and she sustained various bruises and cuts on her arms, right shoulder, and head. Ms. Whitfield was struck on the arm during the attack but did not sustain any significant injuries. Mr. Deadmon had several jammed fingers and one broken finger.

On August 30, 2011, Mr. Deadmon gave a statement to police and identified the Defendant as the attacker. Mr. Deadmon testified that he was unable to sign the document reflecting his identification of the Defendant as his attacker or his witness statement because both of his hands were bandaged. He testified that someone else had signed for him, at his direction. Sergeant Frank Hannah, the investigator responsible for

the case, testified that a secretary at the police station signed for Mr. Deadmon at Mr. Deadmon's request because he could not sign for himself.

During his trial testimony, Mr. Deadmon claimed not to remember many of the events detailed in his statement. The prosecution entered Mr. Deadmon's statement to police as substantive evidence pursuant to Tennessee Rule of Evidence 803(26), and defense counsel objected on the ground that Mr. Deadmon did not sign the statement himself. The trial court found that, because the statement was signed at Mr. Deadmon's direction, he had adopted the signature as his own, thus complying with the signature requirement of Rule 803(26)(b).

Both Ms. Scott and Ms. Whitfield also gave statements to the police recounting the Defendant's assault, and both identified the Defendant as their attacker from a photographic array.

Following the close of proof, the trial court granted the Defendant's motion for judgments of acquittal pursuant to Tennessee Rule of Criminal Procedure 29 in Counts 2 and 4 after finding that the State had failed to prove the element of serious bodily injury relative to the assaults of Ms. Scott and Mr. Deadmon. A jury convicted the Defendant in Counts 1 and 3 of the attempted misdemeanor reckless endangerment and aggravated assault of Ms. Scott, respectively. In Count 5, the Defendant was convicted of the reckless aggravated assault of Mr. Deadmon. The Defendant was convicted in Count 6 of felony reckless endangerment of Ms. Whitfield. Finally, in Count 7, the Defendant was convicted of vandalism of $500 or less. Following a sentencing hearing, the trial court merged the attempted reckless endangerment conviction into the aggravated assault conviction of Ms. Scott. The trial court imposed a total effective sentence of twenty-seven years. The Defendant filed a timely motion for new trial, which was denied. He then filed a timely notice of appeal.

ANALYSIS

On appeal, the Defendant asserts that the trial court erred by admitting Mr. Deadmon's statement as substantive evidence for two reasons: (1) the statement was not "signed by the witness" within the meaning of Tennessee Rule of Evidence 803(26)(b); and (2) the trial court did not hold a hearing outside the presence of the jury prior to admitting the statement as required by Tennessee Rule of Evidence 803(26)(c). Essentially, the Defendant argues that Mr. Deadmon's statement was hearsay and did not meet the requirements for admissibility specified in Rule 803(26). The Defendant further contends that the evidence produced at trial is insufficient to sustain his convictions for aggravated assault, reckless aggravated assault, and felony reckless endangerment. We consider each issue in turn.

*I. Error in Admitting the Statement of Mr. Deadmon*

Our supreme court has recently explained an appellate court's standard of review regarding questions of the admissibility of hearsay evidence as follows:

> When the trial court makes factual findings and credibility determinations in the course of ruling on an evidentiary motion, these factual and credibility findings are binding on a reviewing court unless the evidence in the record preponderates against them. State v. Gilley, 297 S.W.3d [739,] 759–61 [(Tenn. 2008)]. Once the trial court has made its factual findings, the next questions—whether the facts prove that the statement (1) was hearsay and (2) fits under one of the exceptions to the hearsay rule—are questions of law subject to de novo review.

Kendrick v. State, 454 S.W.3d 450, 479 (Tenn. 2015) (citing State v. Schiefelbein, 230 S.W.3d 88, 128 (Tenn. Crim. App. 2007); Keisling v. Keisling, 196 S.W.3d 703, 721 (Tenn. Ct. App. 2005)).

"'Hearsay' is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." Tenn. R. Evid. 801(c). "Hearsay is not admissible except as provided by these rules or otherwise by law." Tenn. R. Evid. 802. Tennessee Rules of Evidence 803 and 804 provide exceptions to the general rule that hearsay is inadmissible. As is pertinent to this appeal, Rule 803(26) provides a hearsay exception for a testifying witness's prior inconsistent statement. The statement is admissible as substantive evidence if the following conditions are satisfied: (1) the statement must be admissible under Tennessee Rule of Evidence 613(b);[2] (2) the declarant must testify at the trial or hearing and be subject to cross-examination about the statement; (3) the statement must be audio or video recorded, written and signed by the witness, or given under oath; and (4) the trial court must conduct a jury-out hearing to determine by a preponderance of the evidence that the prior statement was made under circumstances indicating trustworthiness. Tenn. R. Evid. 803(26). In the interest of justice, "[Rule 803(26)] incorporates several safeguards to assure that the prior inconsistent statements are both reliable and authentic." Tenn. R. Evid. 803(26) Advisory Comm'n Cmts. Therefore, the Rule's requirements should be construed in a manner that insures reliability and authenticity.

---

[2] Tennessee Rule of Evidence 613(b) provides that "[e]xtrinsic evidence of a prior inconsistent statement by a witness is not admissible unless and until the witness is afforded an opportunity to explain or deny the same and the opposite party is afforded an opportunity to interrogate the witness thereon, or the interests of justice otherwise require."

## A. Signed by the Witness

The Defendant first contends that the trial court erred by allowing the prosecution to enter as substantive evidence Mr. Deadmon's statement to police, in violation of Tennessee Rule of Evidence 803(26). Specifically, the Defendant argues that Mr. Deadmon did not sign the statement as required by Rule 803(26)(b). The State responds that because Mr. Deadmon was unable to sign himself and the signature was at Mr. Deadmon's direction, Mr. Deadmon adopted the signature as his own, meeting the "signed by the witness" requirement found in Rule 803(26)(b).

The law recognizes that legitimate reasons may exist that make it impossible for a person to sign his or her name. Accordingly, "[i]n the absence of a statute the general rule is that a signature may be made for a person by the hand of another who acts in the presence of such person at his direction, request, or with his acquiesce." Stoots v. State, 325 S.W.2d 532, 538 (Tenn. 1959) (citing 80 C.J.S. Signatures § 6, p. 1291). As an example, our law allows a last will and testament to be signed by another at the direction of the testator. See Tenn. Code Ann. § 32-1-104(1)(C). While Rule 803(26)(b) requires the statement to be signed by the witness, the circumstances of this case support the trial court's determination that the signing of the witness's name by a third party at the witness's direction satisfies the requirements of Rule 803(36)(b).

In this case, both Sergeant Hannah and Mr. Deadmon testified that Mr. Deadmon's hands were injured, and a secretary at the police station therefore signed Mr. Deadmon's statement at Mr. Deadmon's direction. At trial, Mr. Deadmon testified multiple times that the signature on the statement was his, albeit written by another at his request. Further, Mr. Deadmon did not say that the words in the statement were not his or were false. On the contrary, he said that "it could have happened," but he simply could not remember at the time of trial.

Mindful of the overriding considerations of authenticity and reliability, we note that the same procedure was followed regarding the photographic display presented to Mr. Deadmon. The same secretary who signed the statement at Mr. Deadmon's direction marked the photo selected by Mr. Deadmon and signed Mr. Deadmon's name to the document. Mr. Deadmon testified that he in fact had selected the photo that had been marked. Therefore, we conclude that the trial court did not err in finding that the witness's written statement was "signed by the witness" as required by Rule 803(26)(b).

## B. Jury-Out Hearing

The Defendant next argues that the record is clear that the prosecution did not request a hearing out of the presence of the jury for the judge to determine by a

preponderance of the evidence that the prior statement was made under circumstances indicating trustworthiness, as required by Tennessee Rule of Evidence 803(26)(c). Based on these alleged errors, the Defendant requests that this court grant him a new trial. The State responds by conceding that the State never requested such a hearing pursuant to Rule 803(26)(c) and that such a hearing was never held. However, the State argues that any error regarding the admission of Mr. Deadmon's statement was harmless because it did not affirmatively appear to have affected the outcome of the trial.

The advisory comments to Tennessee Rule of Evidence 803(26) state, "The rule requires that the party seeking to have the statement treated as substantive evidence request a hearing out of the presence of the jury to satisfy the judge 'by a preponderance of the evidence that the prior statement was made under circumstances indicating trustworthiness.'" Tenn. R. Evid. 803(26) & Advisory Comm'n Cmts. The record is clear that a hearing was never requested by the prosecution and never held. Therefore, the trial court erred in admitting Mr. Deadmon's statement as substantive evidence without first holding a hearing outside the presence of the jury.

We must next determine the gravity of the trial court's error. The Defendant argues that the trial court's failure to hold a hearing prior to admitting Mr. Deadmon's statement constitutes reversible error. The State responds that any error in admitting Mr. Deadmon's statement was harmless because it did not affirmatively appear to have affected the outcome of the trial.

Tennessee recognizes three categories of error:

> 1) [S]tructural constitutional errors, which compromise the integrity of the judicial process and require automatic reversal; 2) nonstructural constitutional errors, which require reversal unless the State proves beyond a reasonable doubt that the error is harmless; and 3) non-constitutional errors, which do not require reversal absent proof by the defendant that the error more probably than not affected the judgment or would result in prejudice to the judicial process.

State v. Brown, 311 S.W.3d 422, 434 (Tenn. 2010) (citing State v. Rodriguez, 254 S.W.3d 361, 371-72 (Tenn. 2008)). The current case falls under the third category.

"A violation of an evidentiary rule may not mandate reversal if the error 'was more probably than not harmless.'" State v. Martin, 964 S.W.2d 564, 568 (Tenn. 1998) (citing United States v. Barrett, 703 F.2d 1076, 1081-82 (9th Cir. 1983)). Under Tennessee Rule of Criminal Procedure 52(a), "[n]o judgment of conviction shall be reversed on appeal except for errors which affirmatively appear to have affected the

result of the trial on its merits." Furthermore, "[t]he greater the amount of evidence of guilt, the heavier the burden on the defendant to demonstrate that a non-constitutional error involving a substantial right more probably than not affected the outcome of the trial." State v. Rodriguez, 254 S.W.3d at 372. Also, "[t]he improper admission of evidence that is merely cumulative on matters shown by other admissible evidence may be harmless error." Newcomb v. Kohler Co., 222 S.W.3d 368, 388 (Tenn. Ct. App. 2006) (citing McClure v. Mexia Indep. Sch. Dist., 750 F.2d 396, 402 (5th Cir.1985)).

In his statement to police, Mr. Deadmon said,

> I was sitting there on the porch with my neighbor and my mom when [Ms. Scott], . . . came running up yelling at me to please help her. She [was] chased by [the Defendant], he had a pipe in his hand. I asked her what was going on and she told me that he was trying to hurt her and he tried to swing on her. [The Defendant] told her "I'm fixing to kill you b---h" and he swung at her on her arm real hard. She threw her hands up and tried to protect herself and she got behind me. I told [the Defendant] to stop and stepped between both of them. Once I did that he kept swinging and that's when he hit me. [The Defendant] ran around me and chased [Ms. Scott] around the yard and she fell and [the Defendant] started hitting her again on the head, face and her stomach. I tried to lean across her to stop some of the blows, that's when I got hit. My neighbor, [Ms. Whitfield] drove up into the yard and [the Defendant] hit her one good whap on the arm with that pipe. My Momma told her to get into the house, that's when [the Defendant] started hitting her car and broke out all the windows and stuff. [The Defendant] ran off and me and [Ms. Scott] were laying [sic] on the ground until the ambulance arrived and took us to Methodist South Hospital.

The inconsistency between Mr. Deadmon's statement to police and Mr. Deadmon's trial testimony arose when Mr. Deadmon testified that he did not remember the sequence of events he gave in his earlier statement to police and that he presently did not recall many of the details of the incident. Mr. Deadmon said, "[I] remember [the Defendant] . . . I remember him and the young lady out in the yard tangling at each other. Okay. And he may have got the best of her; but a lot of stuff that's detailed on here, I do not remember."

The evidence against the Defendant at trial was strong. Three separate witnesses testified to substantially similar versions of the events of August 28, 2011. Ms. Scott and Ms. Whitfield in their trial testimony, and Mr. Deadmon in his previous statement, each testified that the Defendant was in Mr. Deadmon's yard, swinging a pipe, and that the

-8-

Defendant hit Ms. Scott with the pipe. Furthermore, included in both Mr. Deadmon's statement and Ms. Whitfield's trial testimony was the detail that they too were hit during the incident, while attempting to help Ms. Scott. Hospital records detailed the injuries sustained by Ms. Scott and Mr. Deadmon resulting from the incident. All three witnesses identified the Defendant to police by photographic array.

The information contained in Mr. Deadmon's statement was almost identical to the properly admitted testimony of Ms. Scott and Ms. Whitfield. The statement did not add any new or vital element to the prosecution's case but rather served to confirm what had already been presented in testimony. We conclude that the erroneous admission of Mr. Deadmon's statement to police was harmless because the error does not appear to have affirmatively affected the outcome of the trial and because the evidence contained in the statement was cumulative in nature.

## II. Sufficiency of Evidence

The Defendant next contends that the evidence produced at trial was insufficient to support his convictions for aggravated assault upon Ms. Scott, reckless aggravated assault upon Mr. Deadmon, and felony reckless endangerment of Ms. Whitfield. We disagree.

An appellate court's standard of review when a defendant questions the sufficiency of the evidence on appeal is "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). This court does not reweigh evidence; rather, it presumes that the jury has resolved all conflicts in the testimony and drawn all reasonable inferences from the evidence in favor of the State. See State v. Sheffield, 676 S.W.2d 542, 547 (Tenn. 1984); State v. Cabbage, 571 S.W.2d 832, 835 (Tenn. 1978). Questions regarding witness credibility, conflicts in testimony, and the weight and value to be given to evidence are resolved by the jury. See State v. Bland, 958 S.W.2d 651, 659 (Tenn. 1997).

A guilty verdict "removes the presumption of innocence and replaces it with a presumption of guilt, and [on appeal] the defendant has the burden of illustrating why the evidence is insufficient to support the jury's verdict." Id.; State v. Tuggle, 639 S.W.2d 913, 914 (Tenn. 1982). "This [standard] applies to findings of guilt based upon direct evidence, circumstantial evidence, or a combination of [both] direct and circumstantial evidence." State v. Pendergrass, 13 S.W.3d 389, 392-93 (Tenn. Crim. App. 1999). The standard of proof is the same, whether the evidence is direct or circumstantial. State v. Dorantes, 331 S.W.3d 370, 379 (Tenn. 2011). Likewise, appellate review of the convicting evidence "is the same whether the conviction is based upon direct or

circumstantial evidence." Id. (quoting State v. Hanson, 279 S.W.3d 265, 275 (Tenn. 2009)) (internal quotation marks omitted). The duty of this court "on appeal of a conviction is not to contemplate all plausible inferences in the [d]efendant's favor, but to draw all reasonable inferences from the evidence in favor of the State." State v. Sisk, 343 S.W.3d 60, 67 (Tenn. 2011).

*A. Aggravated Assault of Ms. Scott*

The Defendant first contends that the evidence was insufficient to support his conviction for the aggravated assault of Ms. Scott because she was the initial aggressor, and, therefore, he was acting in self-defense. The State responds that the evidence was sufficient to support the Defendant's conviction for aggravated assault.

Tennessee Code Annotated section 39-13-101 provides that a person commits assault when he or she "[i]ntentionally, knowingly or recklessly causes bodily injury to another." Tenn. Code Ann. § 39-13-101(a)(1). "[B]odily injury" includes "abrasions and cuts, physical pain, illness or impairment." Tenn. Code Ann. § 39-11-106(a)(2). As relevant to this case, aggravated assault is committed when a person "[i]ntentionally or knowingly commits an assault as defined in § 39-13-101 and . . . uses or displays a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(1)(A). A "deadly weapon" is defined as "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tenn. Code Ann. § 39-11-106(a)(5)(B).

In this case, evidence in the light most favorable to the State showed that the Defendant arrived at Mr. Deadmon's house, ran after Ms. Scott screaming that he was going to "get her," and then proceeded to beat her with a hot pipe. Evidence showed that Ms. Scott sustained several bodily injuries, including broken bones and burns, from which she still had scars. Additionally, there was sufficient evidence that the pipe was used in a manner capable of causing serious bodily injury or death, making it a "deadly weapon" within the meaning of section 39-11-106(a)(5)(B).

As for the Defendant's self-defense argument, Ms. Scott testified that she armed herself with a bat and swung at the Defendant because he was threatening her and "running up on" her. Furthermore, Ms. Scott attempted to escape from the Defendant, but he pursued her and beat her with the pipe as she lay defenseless on the ground. The jury was instructed on self-defense and chose not to credit the Defendant with that defense. We conclude that the evidence presented was sufficient for a reasonable jury to convict the Defendant of the aggravated assault of Ms. Scott.

## B. Reckless Aggravated Assault of Mr. Deadmon

The Defendant was also convicted of the reckless aggravated assault of Mr. Deadmon. On appeal, the Defendant argues that Mr. Deadmon "testified that no one assaulted him." The State responds that the evidence supported a finding that the Defendant knew his wielding the pipe could result in injury and, therefore, supports the Defendant's conviction of reckless aggravated assault of Mr. Deadmon.

Again, a person commits assault when he or she "[i]ntentionally, knowingly or recklessly causes bodily injury to another," and "bodily injury" includes "abrasions and cuts, physical pain, illness or impairment." Tenn. Code Ann. § 39-13-101(a)(1). Additionally, aggravated assault is committed when a person "[r]ecklessly commits an assault as defined in [section] 39-13-101(a)(1) and . . . uses or displays a deadly weapon." Tenn. Code Ann. § 39-13-102(a)(1)(B). A "deadly weapon" is defined as "[a]nything that in the manner of its use or intended use is capable of causing death or serious bodily injury." Tenn. Code Ann. § 39-11-106(a)(5)(B). Tennessee Code Annotated section 39-11-106(31) provides:

> "Reckless" means that a person acts recklessly with respect to . . . the result of the conduct when the person is aware of, but consciously disregards a substantial and unjustifiable risk that . . . the result will occur. The risk must be of such a nature and degree that its disregard constitutes a gross deviation from the standard of care that an ordinary person would exercise under all the circumstances as viewed from the accused person's standpoint.

Viewed in the light most favorable to the State, the evidence showed that the Defendant was swinging a hot, metal pipe at Ms. Scott, and Mr. Deadmon was hit while attempting to break up the altercation. There was ample evidence that the Defendant knew that swinging the pipe could hurt anyone who was hit by the pipe, and the Defendant still chose to engage in that conduct. Therefore, a reasonable jury could infer that the Defendant was acting recklessly. The evidence also showed that because of the Defendant's actions, Mr. Deadmon suffered several injuries, including jammed and broken fingers. As previously discussed, the evidence supports a finding that the pipe used was a "deadly weapon." See Tenn. Code Ann. § 39-11-106(a)(5)(B). It is irrelevant that Mr. Deadmon testified that he was not assaulted. The Defendant was not required to have intended to assault Mr. Deadmon or Mr. Deadmon believe that he was being assaulted. All that was required was that the Defendant was acting recklessly with respect to the consequences of him swinging a hot, metal pipe; that Mr. Deadmon suffered bodily injury; and that the pipe was a deadly weapon. Therefore, we conclude

-11-

that the evidence was sufficient to support the Defendant's conviction for the reckless aggravated assault of Mr. Deadmon.

### C. *Felony Reckless Endangerment of Ms. Whitfield*

Finally, the Defendant contends that the evidence is insufficient to support his conviction for the reckless endangerment of Ms. Whitfield because she testified that she armed herself with a stick prior to the Defendant's arrival at Mr. Deadmon's house. The State responds that the evidence is sufficient.

Reckless endangerment is committed when a person "recklessly engages in conduct which places or may place another person in imminent danger of death or serious bodily injury." Tenn. Code Ann. § 39-13-103(a). Reckless endangerment is a Class E felony when committed with a deadly weapon. Tenn. Code Ann. § 39-13-103(b). "[F]or the threat of death or serious bodily injury to be 'imminent,' the person must be placed in a reasonable probability of danger as opposed to a mere possibility of danger." State v. Payne, 7 S.W.3d 25, 28 (Tenn. 1999). "Additionally, in order to convict an accused of reckless endangerment, 'the State must show that a person or class of persons were in an area in which a reasonable probability of danger existed.'" State v. Goodwin, 143 S.W.3d 771, 778 (Tenn. 2004) (citing Payne, 7 S.W.3d at 28).

Viewed in the light most favorable to the State, the evidence presented was that the Defendant was violently swinging a pipe in an attempt to hit Ms. Scott, and Ms. Whitfield was struck while trying to break up the altercation. As discussed above, the pipe, as utilized by the Defendant, was a deadly weapon, and the Defendant knew that swinging a pipe could hurt anyone who was hit by the pipe. Therefore, a reasonable jury could infer that the Defendant's conduct was reckless. Evidence showed that Ms. Whitfield was in fact struck by the Defendant, thus, she was necessarily in an area in which there was a reasonable probability of danger. Ms. Whitfield testified that she picked up a stick because the Defendant had repeatedly threatened her and Ms. Scott. And, again, upon consideration of all the proof, the jury concluded that the Defendant was not acting in self-defense. Accordingly, we conclude that there was sufficient evidence to support the Defendant's conviction for the reckless endangerment of Ms. Whitfield, and the Defendant's issue is without merit.

### CONCLUSION

Based on the foregoing, we conclude that the trial court erred in admitting Mr. Deadmon's statement as substantive evidence without first conducting a jury-out hearing as required by Tennessee Rule of Evidence 803(26). However, we conclude that this error was harmless as it did not affirmatively affect the outcome of the trial.

Furthermore, we conclude that the evidence presented at trial was sufficient to support the Defendant's convictions for the aggravated assault, reckless aggravated assault, and felony reckless endangerment. The judgments of the trial court are therefore affirmed.

_____
D. KELLY THOMAS, JR., JUDGE